OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1897.

### (*Continued from Volume 139.*)

---

DOYLE v. MISSOURI, KANSAS & TEXAS TRUST
COMPANY, *Appellant.*

Division Two, June 8, 1897.*

1. **Negligence:** MASTER AND SERVANT. It is the duty of the master to furnish the laborer in his service a reasonably safe place to work, and in default thereof he is guilty of negligence. The servant has the right to presume that the master will not send him into a dangerous place without assuming the risks of so doing.

2. ———: ———: REASONABLY SAFE PLACE TO WORK. What is a reasonably safe place to work, where the evidence with respect thereto is conflicting, is always one for the consideration of the triers of facts; but where the evidence is all one way, the question becomes one of law to be determined by the court, the rule being that where the facts with respect to the negligence of the parties are such that reasonable minds might differ as to the importance thereof the case should go to the jury.

---

*NOTE.—Decided May 11; rehearing denied June 8, 1897.

| 140 | 1 |
| 75a | 180 |

| 140 | 1 |
| 151 | 643 |

| 140 | 1 |
| 81a | 321 |
| 82a | 179 |

| 140 | 1 |
| a156 | 244 |

| 140 | 1 |
| 86a | 149 |
| 86a | 150 |
| 86a | 435 |

| 140 | 1 |
| 163 | 622 |

| 140 | 1 |
| 166 | 464 |

| 140 | 1 |
| 92a | ¹117 |

| 140 | 1 |
| 95a | ¹ 28 |
| 95a | ³117 |
| 95a | ³118 |
| 95a | ³120 |
| 96a | ³381 |
| 99a | ³402 |
| 100a | ³211 |

3. ——: ——: KNOWLEDGE OF RISKS. The mere fact that the servant knows the defects in the appliances furnished him by his master for the prosecution of his work, may not charge him with contributory negligence, nor with assumption of the risks growing out of such use. The real question is, did he know, or ought he to have known in the exercise of ordinary prudence, that the *risks*, and not merely the defects, existed?

4. ——: ——: OBVIOUS DEFECTS IN SCAFFOLD. The evidence showed that plaintiff, who had been working on the ground around an elevator for two months and had never been on top, was ordered by defendant, against his will, to go to the top of the building to work, on pain of losing his employment; that he was put to carrying lumber over a long runway consisting of two planks ten inches wide, along which at different places other planks were placed to permit the laborers to step aside and pass each other; that one of these side planks was not nailed down, which fact was not known to plaintiff; that after he had been working three hours he stepped on the end of this plank to permit a fellow laborer to pass, and was precipitated forty-five feet below; that the scaffold had been constructed some time before, and as soon as he got on it he went to work, supposing the plank was nailed; *held*, that the defects in the construction of the scaffold were not so obvious as to charge a servant of ordinary prudence with a knowledge of their existence, nor was his opportunity for seeing them such as to charge him with negligence for not knowing them; and therefore the question of negligence was rightfully submitted to the jury.

5. ——: EVIDENCE: METHOD OF CONSTRUCTION. The defendant had the right to adopt any method it deemed proper in constructing and removing the scaffolding, and evidence showing the methods employed in other elevators was inadmissible; but where it clearly appears that the evidence could not have misled or influenced the jury or changed the verdict, the judgment will *not* be reversed because of the admission of such evidence.

6. Practice: REMARKS OF COUNSEL. Objections to improper remarks by counsel in arguing a case can not be made for the first time in a motion for a new trial.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*Trimble & Braley* and *G. A. Vandeveer* for appellant.

(1) There was no evidence to take the case to the jury. No negligence was proven against the defendant. The appliance in question was one which the plaintiff could have used with entire safety, had he but looked where he was going. There is not a scintilla of evidence in the record that it was not safe. But if it was negligent to use the scaffolding complained of by the plaintiff, he assented to its use by going to work upon it. The defects were obvious and he was bound to see them and take care against them. When these facts exist there can be no recovery. *Fugler v. Bothe,* 117 Mo. 475; *Steinhauser v. Spraul,* 28 S. W. Rep. 620; 30 S. W. Rep. 102; *Thomas v. Railroad,* 109 Mo. 187; *Berning v. Medart,* 56 Mo. App. 443; *Watson v. Coal Company,* 52 Mo. App. 366; *Bohn v. Railroad,* 106 Mo. 429; *Sullivan v. Mfg. Co.,* 113 Mass. 396; *Moulton v. Gage,* 138 Mass. 390; *Stuart v. Railroad,* 163 Mass. 391; *Rush v. Railroad,* 36 Kan. 129, 134; *Railroad v. Drake,* 53 Kan. 1; *Naylor v. Railroad,* 53 Wis. 661, 666. (2) Most of the witnesses were unqualified to testify what "the usual way of taking out scaffolding" was, from lack of experience, and the testimony was entirely immaterial because the appellant had the right to select its own method of doing business and a valid contract of employment was entered into by the parties in reference to that method. Bailey on Master's Liab., pp. 142 and 145; *Rooney v. Cordage Co.,* 153 Mass. 161; *Naylor v. Railroad,* 53 Wis. 661. (3) The court below exceeded and abused its discretion in allowing plaintiff's counsel to lead the very willing and pliant witness, Devore, and to suggest to him the answers which they desired to receive. Greenleaf on Evidence, sec. 434. (4) The witness, Devore, was erroneously permitted to

testify to the condition of the runway at the time of the accident, when the testimony shows that he was then in Kansas City, three or four miles away. (5) Whatever conversation passed between the plaintiff and the witness, Devore, at the time Devore told the plaintiff to go to work on top of the elevator, was entirely immaterial, and evidence in regard to it should have been excluded. *Dunn v. Altman*, 50 Mo. App. 231. (6) Devore was allowed to state what he had heard men working about the elevator say about the scaffolding on top, and that other employes than Doyle had refused to work there; he was permitted to narrate a conversation with one of them and to state the reason which the latter had given him for refusing to work on top. *O'Neill v. Crain*, 67 Mo. 250; *Fougue v. Burgess*, 71 Mo. 389. (7) The hypothetical questions were not based on the facts proven, and therefore defendant's objections to the testimony should have been sustained. *Benjamin v. Railroad*, 50 Mo. App. 602; *Russ v. Railroad*, 112 Mo. 45; *Senn v. Railroad*, 108 Mo. 142. (8) Plaintiff's instructions from 1 to 8 are erroneous and should have been refused, rather than given. Plaintiff's first instruction is wholly wrong, because it utterly ignores the issue of plaintiff's assumption of the risks apparent to his observation. *Railroad v. Jagerman*, 26 S. W. Rep. 591. Plaintiff's second permits a finding for the plaintiff, if the foreman failed to repair defects, or warn the plaintiff of his danger, when there is no charge in the petition of a duty or a neglect to so do. Bailey on Master's Liability, 166; Beach on Cont. Neg., secs. 362, 363, 368 to 372; *Wormell v. Railroad*, 79 Me. 397; *Railroad v. Smithson*, 45 Mich. 212. The plaintiff's third instruction is erroneous in that it is an abstract proposition of law, and does not apply to the facts of the case and should therefore have been refused. The fourth instruction presents a one-sided

view of the obligations resting upon two parties sustaining the relation of master and servant. The fifth instruction is subject to the objection that the plaintiff had no right to quiet the suggestions of prudence within him by assuring himself that somebody else had taken greater precaution for his safety than he was willing to take on his own behalf. *Ragon v. Railroad*, 97 Mich. 265. The sixth instruction is viciously erroneous. It wholly ignores the duty of the plaintiff to use his eyes and see what was obvious. There were no latent defects in the runway. The plaintiff had no right to assume that it was constructed otherwise than it was, for its construction was necessarily obvious to everybody. The eighth instruction permits the jury to conjecture sufferings and damages of and to the plaintiff in the future. *Railroad v. Tobriner,* 147 U. S. 571; *Ross v. Kansas City*, 48 Mo. App. 440. (9) The defendant's first instruction properly declared the law and should have been given. (10) The court should have sustained the defendant's motion for a new trial because the opposing counsel went outside the record in his argument, misquoted the evidence and misrepresented the law, abused corporations generally, and sought to inflame the passions of the jury against the defendant.

*Edward H. Stiles* and *Henry J. Latshaw, Jr.*, for respondent.

(1) The master was liable for the injury to his servant under the circumstances detailed in evidence. *Sullivan v. Railroad*, 107 Mo. 66; *Stephens v. Railroad*, 96 Mo. 212; *Schroeder v. Railroad*, 108 Mo. 322; *Shortel v. St. Joseph*, 104 Mo. 114; *Keegan v. Kavanaugh*, 62 Mo. 230. (2) "The question of contributory negligence is a mixed one of law and fact and should

be determined by the jury under the guide of proper instructions in the light of all the attending circumstances." *Fulks v. Railroad*, 111 Mo. 335; *Soeder v. Railroad*, 100 Mo. 673; *Mahaney v. Railroad*, 108 Mo. 191; *Roddy v. Railroad*, 104 Mo. 234; *O'Mellia v. Railroad*, 115 Mo. 205; *Maus v. Springfield*, 101 Mo. 613; *Easley v. Railroad*, 113 Mo. 236. (3) Where the facts are either disputed, or are such that reasonable men might fairly differ upon the question whether there was negligence or not, the question of negligence should be submitted to the jury. *Fusili v. Railroad*, 45 Mo. App. 535; *Lynch v. Railroad*, 112 Mo. 420; *Sandifer v. Lynn*, 52 Mo. App. 553; *O'Mellia v. Railroad*, 115 Mo. 205; *Gratiot v. Railroad*, 116 Mo. 450; *Dowell v. Guthrie*, 116 Mo. 646. (4) "It is only when the facts are such that all reasonable men must draw the conclusion of negligence that the question of negligence is ever considered as one of law for the court." *Dixon v. Railroad*, 109 Mo. 413; *O'Mellia v. Railroad*, 115 Mo. 205; *Bluedorn v. Railroad*, 121 Mo. 258; *Henry v. Railroad*, 113 Mo. 525. (5) Whether plaintiff was guilty of contributory negligence in not exercising proper care to ascertain condition of car on which he was working is a question for the jury. *Roddy v. Railroad*, 104 Mo. 234; *Seymour v. Railroad*, 114 Mo. 266; *Barr v. Kansas City*, 105 Mo. 550. Whether risk is obvious is question of fact. *Moore v. Mill Co.*, 55 Mo. App. 491. (6) When servant assumes position of danger in obedience to the order of the master and sustains injury on account of insufficient appliances, his knowledge of the danger of the position assumed by him will not constitute contributory negligence unless the danger was so glaring that even a servant in a position of subordination would have refused to enter into it. *Schroeder v. Railroad*, 108 Mo. 322; *Stephens v. Railroad*, 96 Mo. 212; *Shortel v. City of St. Joseph*,

104 Mo. 114. And the question is for the jury. *Keegan v. Kavanaugh*, 62 Mo. 230; *Railroad v. Stout*, 17 Wall. 657; *Miller v. Railroad*, 12 Fed. Rep. 600; *Franklin v. Railroad*, 37 Minn. 409; *Railroad v. Fitzpatrick*, 31 Ohio St. 479; *Rummell v. Dilworth*, 111 Pa. St. 343; *Rabl v. Railroad*, 35 Minn. 84; *Nadan v. White, etc., Co.*, 43 N. W. Rep. 1137. (7) In conclusion on this point we may add that defendant by introducing evidence after the overruling of its demurrer to plaintiff's evidence, instead of standing thereon, waived the right to insist that the ruling of the court thereon was erroneous. *Hilz v. Railroad*, 101 Mo. 36; *Jennings v. Railroad*, 112 Mo. 268. (8) The next and only other material complaint is that the instructions were wrong. But when the instructions are considered as a whole, they, beyond any question, correctly embody the law of the case. (9) It is first claimed that the admission of testimony tending to show that the customary and usual mode and the one in general use in removing the scaffoldings from elevators, was to leave the top scaffolding on the bins until the lower scaffoldings had been removed, was erroneous, that the witnesses were not sufficiently expert, etc. The only objection made to this testimony was that it was incompetent, irrelevant and immaterial. This objection is too indefinite, not specific enough. *Masonic Mutual Society v. Lackland*, 97 Mo. 140; *Margrave v. Ausmuss*, 51 Mo. 561; *Clark v. People's, etc., Co.*, 46 Mo. App. 248. It is clearly competent to show, as a circumstance, what the usual and customary way of doing a thing is. But an absolutely complete answer to the point made is, that the court, by a specific instruction, number 7, asked by defendant, ruled out all of this testimony, and instructed the jury not to consider the same in arriving at their verdict. This cured any possible error which might have resulted from the tes-

timony. *Stephens v. Railroad*, 96 Mo. 207; *Allen v. City*, 61 Mo. App. 270.

BURGESS, J.—This is an action for damages for personal injuries sustained by plaintiff, the result of a fall received by him while in the service of defendant as a laborer, in consequence of the alleged defective construction of a scaffold or runway over which he had to pass when in and about his work. He recovered a verdict for $5,000, for which sum judgment was rendered. Defendant appeals.

The petition charges negligence on the part of defendant in failing to properly nail or secure the planks or the boards of the runway; in having planks or boards thereon which were too short and too narrow for the purpose; that one of the planks projected beyond the opposite edges or tops of the sides of one of the bins and failed to reach the edges of the adjoining bins; and in beginning at the top instead of at the bottom to cut out the scaffolding. The answer was a general denial.

On June 21, 1892, the defendant, a corporation organized under the laws of this State, was engaged in the construction of a grain elevator, called "The Sun Elevator," in Kansas City, Missouri. The building was divided by bin walls into four rows of bins from north to south, and fourteen from east to west. When the carpenters had built the bin walls to a height where they could no longer work to advantage without changing their positions, timbers would be laid across the tops of the bin walls from one to two feet apart and loose boards laid over at right angles and of such dimensions that the entire bin would be covered. The workmen, on completing the new scaffold, would build up the wall just as they had done before, until it got so high that they could not reach above it, when they

would lay another set of timbers across the bin and ascend to the next stage, each time taking the flooring with them, but leaving the supports in, because they had become part of the wall.

It was the practice at this elevator to clear out these bins by removing the last staging and having a workman begin at the top and cut out the transverse timbers with a saw, thus removing the timbers as he went down. As the timbers were sawed, the laborers on top would pull up the pieces and deliver them to other laborers who carried them to the south side of the building from whence they were lowered by means of a rope to the ground.

The workmen who carried the lumber from the point at which they were drawn up to the south side of the building, preparatory to its being lowered to the ground, used a runway located about the middle of the building. This runway was built by laying side by side two planks sixteen feet long, ten inches wide, and two inches thick, over the tops of the walls and "lapping" them over the last support with the next pair, and so on. At different places a third plank would be laid so as to afford an opportunity for the workmen to pass each other. At the time of the accident neither roof nor rafters had been erected. At that time plaintiff had been employed at the building some two months, but always worked on the ground and had never been on top. On the morning of that day at about 7:30 or 8 o'clock John Devore, a workman in charge of the laborers, came to him and ordered him to report for work on top of the building. He hesitated because it was unsafe and he was likely to get dizzy, and being hard of hearing, refused to go, whereupon Devore commanded him to go where he told him, or "get his time," meaning that he would discharge plaintiff, but in obedience to this order he went

immediately to work upon the top of the building where ordered by Devore. When he got there he was put to work carrying the short lumber which had been cut out of the bins, to the south side of the building where they were lowered to the ground, and on his way back he met another workman who was carrying an armful of lumber to the same place. Upon meeting him, plaintiff stepped aside on a switch to let him pass, and not knowing that it was not nailed or fastened down, he stepped upon a projecting end which tilted from his weight and let him fall a distance of forty-five feet to the bottom of the building, breaking one of his hips, and injuring his back, spine and hearing.

At the close of the evidence on the part of the plaintiff, and again at the close of all the evidence, defendant asked an instruction in the nature of a demurrer to the evidence, both of which were refused, and defendant duly excepted. The court at the request of the plaintiff, and over the objection and exception of defendant, instructed the jury as follows:

"1.   It was the duty of the defendant to exercise ordinary and reasonable care to provide a reasonably safe place for the plaintiff to do the work which he was engaged to perform. And if you find that plaintiff was employed by the defendant and directed to go on top of the elevator in question and do the work he was engaged in at the time of his injury, then it was the duty of the defendant to have exercised ordinary and reasonable care proportionate to the danger in providing for him a reasonably safe staging or platform on which to do the work; and if you find that it failed in this by omitting to have the boards or planks composing the staging or runway nailed or otherwise properly secured, and that in consequence thereof plaintiff without fault on his part and in the exercise of ordinary

care was injured, then he is entitled to recover in this action; and you will so find.

"2. It was the duty of the defendant to use ordinary care to furnish for the use of plaintiff and his fellow workmen a scaffolding that was reasonbly safe for the purpose for which it was intended and used, and if you find that the defendant negligently failed to perform this duty and furnished a scaffolding that was unsafe; that defendant's foreman in charge of the men and the work knew of the unsafe condition of said scaffolding, and that with such knowledge upon the part of the said foreman, the said foreman further negligently failed to either remedy the defect or warn the plaintiff of the danger of going upon said scaffolding and that the plaintiff while in the exercise of ordinary care and without negligence upon his part and without knowledge of the unsafe condition of the scaffolding went upon said scaffolding in the performance of the duty assigned him and by reason of the defect therein was thrown to the ground and injured, then the plaintiff is entitled to recover.

"3. An employee or servant has the right to assume in the absence of knowledge to the contrary that the appliances which he is called upon to use in the performance of his work are reasonably safe, and if there are latent defects of which he has no knowledge, or which are not obvious to him while using ordinary care and observation, then he does not assume the risk attendant thereon.

"4. If you find that the staging or runway on which plaintiff was injured was constructed before he was sent up there to work, then it is immaterial as to who or which one of defendant's employees constructed it, as it would then be the duty of the defendant in such case to have exercised reasonable care to have

prepared there a staging or runway that was reasonably safe for plaintiff to work upon.

"5.    You are instructed that plaintiff had a right to assume and rely and act upon the assumption that the defendant had used reasonable care in furnishing a reasonably safe scaffolding, staging, or platform upon which he was required to pass in the duties of his employment by the defendant, if he was so required to pass; and that plaintiff was not required to search or inspect such staging, scaffolding, or platform for defects therein that were not obvious and apparent.

"6.    While a servant in accepting employment assumes the ordinary risks incident to it he does not assume those occasioned by the negligence of the master; and while plaintiff in the present case assumed the ordinary risks incident to the work he was called upon to perform, he did not assume those, if there were any such, arising from the negligence of the defendant.

"7.    It was not incumbent on the plaintiff to search for latent defects in the construction of the runway, and he had a right to assume that it was properly constructed, and that it was reasonably safe for the use for which it was designed.

"8.    The court instructs the jury that if you should find for plaintiff you should assess his damages at such sum as you may believe him entitled to under the evidence in this case, but in an amount not exceeding ten thousand dollars; and in arriving at the amount of damages, you should take into consideration the nature and extent of the injuries received by plaintiff, together with the pain and suffering, both physical and mental, if any, caused thereby; also all future pain and suffering if any, and future disability if any, you may believe from the evidence he will suffer from the injury, and expenses he may have incurred in and about his cure."

Defendant requested the court to instruct the jury as follows:

"1. The court instructs the jury that whether the construction of the runway or the manner of doing the work on the Sun elevator at the time plaintiff fell, was the same as is usual in such work or as may have been used upon other elevators either by defendant or other builders, is wholly immaterial in this case, and should not be considered by you in arriving at your verdict.

"2. The court instructs the jury that if the plaintiff did not want to work in the place assigned him on top of the elevator he could have refused to do so, and the defendant had a perfect right to discharge him, if it saw fit so to do, in case he refused to work where directed.

"3. The court instructs the jury that the defendant was not an insurer of the life or safety of the plaintiff while he was at work for it; and if you believe from the evidence that this fall was an accident for which no one was to blame, or that it was the result of the carelessness or negligence of the plaintiff or of some fellow-servant, then your verdict should be for the defendant.

"4. The court instructs the jury that it was the plaintiff's duty to be careful and to guard against accidents, and if you believe from the evidence that the plaintiff knew the manner in which the board upon which he claims to have stepped, was laid, or if the condition of the board was apparent and plaintiff by looking and using ordinary care could readily have discovered the danger, then your verdict should be for the defendant.

"5. The court instructs the jury that the defendant was under no obligation to keep the loose boards picked up and it was plaintiff's duty to observe when

and upon what he was stepping, and if his fall was due to his stepping upon a loose board near the runway or where he was working, then your verdict should be for the defendant.

"6. The court instructs the jury that the plaintiff, Doyle, by entering the employment of the defendant and engaging in the work upon the top of the elevator assumed the ordinary risks and dangers incident thereto, not only so far as they were known to him but also so far as they could have been known to him by the exercise of ordinary care upon his part, and if you believe from the evidence that the plaintiff at and prior to the time of falling knew the condition of the runway and the manner in which it was constructed and laid, or that he could have known its condition and the manner in which it was laid by the exercise of ordinary care and prudence upon his part, then the plaintiff can not recover and your verdict should be for the defendant.

"7. The court instructs the jury that the fact that the bin into which plaintiff fell was left open and uncovered is no evidence of negligence on the part of the defendant and should not be considered by you in arriving at your verdict.

"8. The court instructs the jury that the fact that the defendant is a corporation is wholly immaterial and its rights are the same as an individual's and you should consider the case the same as if it were between two individuals.

"9. The burden of proof is upon the plaintiff and he can not recover unless he proves to your satisfaction and by the greater weight of the evidence each and every fact material to his case."

Which instructions the court gave with the exception of the first, to which ruling and action of the

court in refusing to give said instruction the defendant at the time duly excepted.

The question of paramount importance involved in this litigation is as to whether or not the evidence was sufficient to take the case to the jury. Defendant insists that it was not, and that the court committed error in refusing to give the instruction asked by it in the nature of a demurrer to the evidence at the close of plaintiff's evidence, and also at the close of all the evidence. It is claimed by defendant that this position is justified, upon three propositions, either of which taken as true bars plaintiff's recovery: *First*, that there was no negligence on the part of defendant; *second*, that plaintiff saw all the defects in the runway of which he complains in his petition, and by going to work upon it assumed all risk of injury to be occasioned by it; and, *third*, if he did not see them, still he might have seen them had he but looked, and his failure to look and see, and take proper precautions to protect himself, constitutes contributory negligence which bars his recovery.

It is a rule of universal application that it is the duty of the master to furnish the laborer in his service a reasonably safe place to work, and in default thereof he is guilty of negligence. What is a reasonably safe place to work, where the evidence with respect thereto is conflicting, is always one for the consideration of the triers of facts; but where it is all one way, it becomes a question of law, to be determined by the court. The general rule is, that where the facts with respect to the negligence of the parties are such that reasonable minds might differ with respect thereto, the case should go to the jury.

Now, the evidence showed that the plank called the switchboard upon which the laborers, including plaintiff, engaged in carrying the lumber from one part

of the building to another, were compelled to step to let others pass who were carrying lumber in an opposite direction, was not nailed or secured in any way, so as to prevent it from tilting; and that when plaintiff was returning for a load of lumber in order to let pass another laborer who was carrying a load, he stepped upon the switchboard, but too near its end, which caused it to tilt and precipitate him to the floor beneath, thereby injuring him. There can be no doubt but the board could have been secured so that it would not have tilted, either by fastening it by nails to the cross timbers upon which it rested, or something of the kind, or by adapting the length of the board to the cross timbers so that its ends would have extended to, but no further than, the extreme outer edge of such timbers.

While it is true that "common experience and observation teach scaffolding is a mere temporary structure, not aimed to support all burdens which may be cast upon it," they also teach that a switchboard not fastened or adjusted as we have indicated, is not as safe as if so fastened. We do not, however, intend to be understood as holding that defendant was bound to adopt the best, or any particular method in constructing the scaffold; if it was reasonably safe it was all the law required of it, in any event.

As to the second proposition, plaintiff testified that he had not been on top of the building longer than from three to three and one half hours when the accident happened; that he did not know whether the planks that composed the runway were nailed or not; that he did not know anything about it; had never taken any particular notice of it, but supposed they were nailed; that the scaffold had already been builded when he got up there, and that as soon as he got upon the top he went to carrying lumber. It is argued that these statements are so palpably false that they are

unworthy of belief, and should be entirely disregarded. To this position we can not give our assent. The statements do not seem to us to be at all improbable when the nature of plaintiff's employment, the short time in which he was engaged at work on the runway before the accident, and his opportunities for observing the manner of its construction, are taken into consideration.

With respect to the third proposition it is argued that if plaintiff did not actually see the absence of. nails, the dimensions of the boards, and the projecting end of the switchboard, he might have seen them had he looked, and, as they were obvious defects, if defects at all, and there was nothing to prevent him from seeing the true situation, he assumed the risk.

The facts in this case do not, we think, bring it within the rule contended for by defendant. We are unwilling to say that the defects in the construction of the scaffolding complained of were so exposed and readily perceived by the eye, as to be so obvious as to convey to a person of ordinary common sense and prudence, not only that the defects existed, but that it was dangerous for persons to use the scaffolding by stepping or walking upon it. Nor would plaintiff's opportunity to know of the defects justify us in holding him as possessing such knowledge, if he did not in fact know of them. He had been on top of the building but a few hours when he fell, during which time he had been constantly engaged in carrying lumber, and had no opportunity, so far as the record discloses, except by casual observance, of ascertaining whether the switchboard was securely fastened or adjusted, or not, and had no reason to believe the place in which he was sent to work was not a reasonably safe one. . He was not a carpenter, and was without experience in that kind of

work, or knowledge of the situation, when sent there by Devore, the foreman of defendant, who knew the switchboard was not nailed or otherwise fastened, or might have known had he not been negligent. Devore not only failed to notify plaintiff of its condition, but told him that he would not get hurt. What was said by Devore, however, in regard to his not getting hurt, was in reply to remarks made by plaintiff to the effect that he would rather not go upon the top of the building to work, because he was a little light headed when he got up so high, a little dizzy, and evidently had no reference to the scaffold or the manner of its construction, nor was it an assurance that he would not get hurt by reason of such defects, but rather an assurance that he would not become dizzy, fall and get hurt by reason of such dizziness.

It is the master's duty to his servant to use reasonable diligence in providing for him a safe place to work, and such duty extends not only to such unnecessary and unreasonable risks which are in fact known to him, but such as he might reasonably be expected to know under the facts and circumstances connected with the service. The servant assumes such risks as are reasonably necessary and incident to his employment, as well also as such extraordinary and unusual risks as he may see fit to knowingly assume. But he is not required to exercise the same degree of care and diligence in inspecting and investigating the risks to which he may be exposed as the master, but has the right to presume that the master will furnish him a reasonably safe place to work, and when directed by the master or his *alter ego* to perform certain services, he has the right to presume that he will not send him into a place of danger, without assuming the risks of so doing. But he can not rashly or deliberately expose himself to danger which he knows and appreciates, and then hold

the master responsible in damages for injuries sustained by reason of his rash act.

But "it is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services, and another thing to know or appreciate the *risks* resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence or the assumption of the risks growing out of them. The question is, did he know, or ought he to have known, in the exercise of ordinary common sense and prudence, that the *risks*, and not merely the defects, existed? *Cook v. Railroad*, 34 Minn. 45; *Sullivan v. Railroad*, 107 Mo. 66. There is no ground for claiming that the scaffold was in its construction so glaringly defective that a man of common prudence would not have used it, or that it was so dangerous as to threaten immediate injury, or that it was not reasonable to suppose that it might not be safely used, by the exercise of skill and care, and in such circumstance, even if plaintiff knew of the defects complained of, that would not necessarily preclude a recovery, but whether or not he was guilty of negligence in using the scaffold was a question of fact to be determined by the jury from such knowledge and the other circumstances in evidence. *Huhn v. Railroad*, 92 Mo. 440; *Mahaney v. Railroad*, 108 Mo. 191; *Stephens v. Railroad*, 96 Mo. 207; *Soeder v. Railroad*, 100 Mo. 673.

The evidence was sufficient, we think, to take the case to the jury.

The court, over the objection of defendant, permitted several witnesses for the plaintiff to testify as to methods employed in taking out scaffolding by persons while constructing other elevators differing from that adopted by defendant in this elevator, which is also assigned as error. The objections were that

most of the witnesses from want of experience in such matter were not qualified to testify what "the usual way of taking out scaffolding" was, and because immaterial, as defendant had the right to adopt any method that it deemed proper in removing the scaffolding.   Waiving the first ground of objection, the evidence was clearly inadmissible for the reason stated in the second ground.   *Helfenstein v. Medart et al.*, 136 Mo. 595; *Rooney v. Cordage Co.*, 161 Mass. 153; *Naylor v. Railroad*, 53 Wis. 661.   The mode adopted by defendant in taking out the scaffolding does not seem to have been the cause of the accident, or to have had any direct connection with it.   But it does not necessarily follow that the judgment should be reversed upon that ground alone.   While error is presumed to be prejudicial as to the rights of the party against whom made, where it clearly appears as in this case that it could not have misled or influenced the jury, or changed the result, the judgment will not be reversed because of the admission of such evidence. *McDermott v. Barnum*, 19 Mo. 204; *Craighead v. Wells*, 21 Mo. 404; *Blair v. Corby*, 29 Mo. 480; *Gavisk v. Railroad*, 49 Mo. 274; *Golson v. Ebert*, 52 Mo. 260; *Anderson v. Shockley*, 82 Mo. 250; *Father Matthew Society v. Fitzwilliams*, 84 Mo. 406; *Birney v. Sharp*, 78 Mo. 73.

Nor are we prepared to say that the court exceeded or abused its discretion in allowing plaintiff's counsel to interrogate the witness, Devore, in the manner in which it did, or that there was anything in the statements of the witness in the nature of conclusions that would justify a reversal of the judgment.

Another contention is that the witness, Devore, was erroneously permitted to testify to the condition of the runway at the time of the accident, when his testimony shows that he was then in Kansas City, three

or four miles away. Devore employed plaintiff and other hands who were engaged at work on the elevator at the time of the accident. He knew the condition of the scaffolding that morning at the time he sent plaintiff to work on top of the building, knowing that he would be compelled to use it, and the presumption must be indulged in the absence of evidence to the contrary, that it remained in the same condition it was in up to the time of the accident. The objection seems to be exceedingly technical, and certainly would not justify a reversal.

The conversation that passed between plaintiff and Devore, at the time Devore ordered him on top of the elevator, was properly admitted. Devore was acting for defendant, and what occurred between him and plaintiff at the time was permissible as tending to show that the plaintiff went under protest, in obedience to his order, and that he did not voluntarily assume the risk. Other objections of a similar character were made to the evidence of this same witness, as well also as to the evidence of one B. F. Shaw, who testified as a witness on the part of plaintiff, but there is nothing in the objections which would in any event justify a reversal.

All of plaintiff's instructions are criticised by defendant as having been drawn on the mistaken theory that the defendant was a guarantor of the safety of the runway, that plaintiff assumed nothing except what he actually saw, and that the defects mentioned in the petition were latent. Taking plaintiff's instructions alone the most of them are subject to verbal criticism, but when taken in connection with those given on behalf of defendant, and especially the fourth and sixth, and all of them are read and considered together as they should be, and must have been so read and con-

sidered by the jury, they seem to be free from substantial objection.

The eighth instruction given in behalf of plaintiff is criticised upon the ground that there was no evidence upon which to predicate it; that is, that the testimony did not show that the plaintiff will never recover from the injury. While it is true there was no positive evidence that plaintiff will never recover from his injury, there was evidence tending strongly to show that the injury is permanent, and to justify the jury in finding that future damages will result to plaintiff as a result thereof. The instruction was well warranted by the evidence.

A further contention is that the court committed error in refusing the first instruction asked by defendant. This instruction might very well have been given, but the judgment should not be reversed because of its refusal, as those that were given correctly state the law and fairly present the case. *Hamby v. Brasher*, 51 Mo. 439; *Porter v. Harrison*, 52 Mo. 524; *Meyers v. Railroad*, 59 Mo. 223. It has been ruled that this court will not reverse a judgment for the refusal of an instruction, unless it appear that by so doing an error was committed materially affecting the merits of the action. *Orth v. Dorschlein*, 32 Mo. 366; R. S. 1889, sec. 2303.

A final contention is that the court should have sustained the defendant's motion for a new trial, because counsel for plaintiff went outside of the record in his argument to the jury, misquoted the evidence and misrepresented the law, abused corporations generally, and sought to inflame the passions of the jury against the defendant, thereby prejudicing their minds against defendant, and as a result the verdict by them for plaintiff in a grossly excessive amount. No objection seems to have been made at the time to the re-

marks of counsel, and the objection could not be raised for the first time in the motion for a new trial. If counsel for defendant felt at the time the remarks complained of were being made that they were outside of the record, and unauthorized by the evidence or the law as declared by the court, they should have made their objections to the court, and if overruled saved their exceptions, in the absence of which there is nothing before this court on that score for review.

Finding no error in the record that would justify a reversal of the judgment, it is affirmed. GANTT, P. J., and SHERWOOD, J., concur.