REED, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, May 10, 1904.**

1. **ORDINANCE: Railroad Crossing: Negligence.** A city ordinance providing that a bell shall be sounded by those in charge of a train or engine when approaching a street crossing and providing a penalty for the violation of the provision, was properly admitted in evidence in an action against a railroad company for injuries received at a crossing by reason of the alleged failure of the company's servants to sound a bell. The nonobservance of such ordinance was negligence *per se* on the part of the railroad company.

2. ———: ———: ———. Independent of the ordinance, it was negligence, under section 1102, Revised Statutes of 1899, on the part of the railroad company to back cars over a street crossing without either ringing the bell or sounding the whistle.

3. **CONTRIBUTORY NEGLIGENCE: Jury Question and Question of Law.** Where the facts with respect to contributory negligence were such that reasonable minds might differ as to their effect, the question of negligence was for the jury. It is only where facts are of such a character that all reasonable men must draw the same inference, that the court must decide the question as one of law.

4. ———: ———: **Railroad Crossing.** In an action against a railroad company for damages for injuries received from negligently backing the cars upon plaintiff at a crossing, while he was attempting to cross defendant's tracks, the evidence is examined and it is held a question for the jury whether plaintiff was guilty of contributory negligence.

5. ———: ———: **Last Chance: Harmless Error.** In such action an instruction on the last chance rule, although not warranted by the evidence, was not prejudicial error, where the negligence of the defendant was shown by both parties and the only mooted question of fact was whether or not the plaintiff was guilty of contributory negligence.

Appeal from Wayne Circuit Court.—*Hon. Frank R. Dearing,* Judge.

AFFIRMED.

*Martin L. Clardy* and *Louis F. Dinning* for appellant.

The court erred in refusing to give defendant's instruction at the close of plaintiff's evidence, which instruction was in the nature of a demurrer thereto. VanBach v. Railroad, 171 Mo. 338; Baker v. Railroad, 147 Mo. 140; Hogan v. Railroad, 150 Mo. 36; Culbertson v. Railroad, 140 Mo. 35; Nixon v. Railroad, 141 Mo. 425; Bailey v. Railway, 152 Mo. 449; Lien v. Railroad, 79 Mo. App. 475; Pinney v. Railroad, 71 Mo. App. 577; Gass v. Railroad, 57 Mo. App. 574; Craig v. Sedalia, 63 Mo. 417; Jones v. Barnard, 63 Mo. App. 501; Easley v. Railroad, 113 Mo. 236; Henze v. Railroad, 71 Mo. 636; Zimmerman v. Railroad, 71 Mo. 476; Patty v. Railroad, 88 Mo. 306; Guyer v. Railroad, 174 Mo. 344; Davies v. Railway, 159 Mo. 6; Zumault v. Railroad, 175 Mo. 288; Carroll v. Transit Co., 107 Mo. 653; Boyd v. Railroad, 105 Mo. 371; Jennings v. Railroad, 112 Mo. 268.

### STATEMENT.

Omitting caption, the charging part of the petition is as follows:

"Plaintiff states that on or about the twenty-second day of September, 1902, at a point in said city of Piedmont where defendant's said railroad is crossed at right angles by a travelled public road and street, the name of which is to plaintiff unknown, defendant did, by its agents, servants and employees, so carelessly and negligently run and operate its said locomotive engine and cars on said road that without any fault on the part of plaintiff one of defendant's said cars was driven, with great force and violence, upon and against the person of plaintiff while he was lawfully upon said street crossing as aforesaid, thereby wounding, bruising and mangling the left leg of plaintiff so as to compel him to have his said left leg amputated, thus making this plaintiff

a cripple for life and incapacitating him for work and labor and for earning a living for himself; that on approaching said crossing in said city defendant carelessly and negligently failed to give any signal or indication of its approach; that defendant also negligently failed to ring its bell or sound its whistle attached to its said engine on nearing said crossing, as was its duty to do; that defendant negligently ran said car upon and across said street crossing in said city, at the time above set out, without having anyone in charge thereof and without having anyone in advance of said car to indicate its approach and without having anyone at the front end of said car to keep a close lookout for pedestrians who were to defendant's knowledge in the habit of crossing its said railroad at said point frequently and at all hours of the day and especially at the time when this injury occurred; that defendant negligently and recklessly ran said car upon and against plaintiff after its said agents and servants saw or by the exercise of ordinary care could have seen plaintiff upon said crossing in time to have avoided said injury to plaintiff, but that with said knowledge or the opportunity to have obtained the same defendant negligently and recklessly ran said car upon and against plaintiff as aforesaid; that at the time and place of the aforesaid injury to plaintiff defendant was carelessly and negligently pushing said car across said street crossing in said city in front of its said engine without having anyone in advance of or upon the same to give warning of its approach; that the aforesaid injury to plaintiff was caused by the aforesaid careless, reckless and negligent acts and conduct of defendant.

"Plaintiff further states that by section 31, of ordinance No. 39, of said city of Piedmont, approved April 22, 1893, it is provided that it shall be unlawful for the engineer or other person in charge of any engine or other train of cars while running through the city of Piedmont to so run it without sounding the bell or caus-

ing the same to be sounded upon approaching the crossing of any street, and keeping the same ringing until the engine and cars shall have crossed the same; that said section 31 of said ordinance aforesaid applies to this defendant and that said defendant willfully disregarding said section 31 of the ordinance aforesaid did on the occasion aforesaid carelessly, recklessly, unlawfully and in utter disregard of the lives, safety and property of other persons and this plaintiff in particular, ran its locomotives, engines and cars through the city of Piedmont and at the point where and at the time when the injury was done to this plaintiff without sounding the bell or causing the same to be sounded and that by reason of this and by reason of the recklessness, carelessness and negligence of ,the servants and employees of defendant in managing and running its locomotives, engines and cars as aforesaid at the time and place where plaintiff was injured and without any negligence on the part of this plaintiff the injury complained of occurred.''

The answer is as follows:

''Now at this day comes the defendant, and by leave of court first had and obtained, files this its answer to the amended petition of plaintiff filed in the above-entitled cause, and for such answer, denies each and every allegation in said amended petition contained, except that defendant is a railway corporation, as in plaintiff's amended petition charged.

''And for further answer and defense to said amended petition, defendant says that whatever injuries if any, plaintiff sustained on the occasion mentioned in said amended petition, were the result of his own negligence and carelessness, which directly contributed to cause the same.

''Wherefore, defendant having fully answered, prays to be hence dismissed with its costs in this behalf expended.''

The defendant's railroad runs north and south through Piedmont (a city of the fourth class), in Wayne county, Missouri. The main track of the road runs west of the depot. From fifty to sixty feet east of the main track is a side track known as the house track, and west of the main track, eight or ten feet, is another side track known as track number one. All of these tracks cross Forrest street which runs east and west about forty feet south of the depot. Near five p. m. on September 22, 1902, a local freight train, having a carload of local freight for Piedmont, arrived in said town. This carload of freight was left at the freight house on the house track to be unloaded. The engine with a number of cars then ran back south into the yards, switched onto the main track and backed north until the north car was within about three feet of the south line of Forrest street. The train was then cut in two, leaving nine cars standing on the main track, and the engine pulled back south with the remainder of the train and switched several cars to their place on track number one. The engine then went back south of the yards, switched onto the main track and backed up to the nine cars that had been left on that track for the purpose of coupling onto them, pulling them back south and taking them off the main track. At the time the engine backed up to the nine cars on the main track, the plaintiff was standing astride the west rail of that track. In making the coupling the north car of the nine was pushed over the crossing striking plaintiff on the left shoulder knocking him down and passing over one of his legs, crushed and mangled it so it had to be amputated below the knee. Plaintiff lived in Piedmont, west of the railroad. Carter & Company had a store on the east side of the railroad track.

Plaintiff testified that he went to Carter & Company's store to get some potatoes and after procuring same, started to return to his home on Forrest street; that just as he got over the main track the freight train

pulled upon track number one and headed him off and he then stepped between the two tracks; that the engine pulled four or five cars over the crossing and reversed and backed down; that he noticed the steam escaping from the engine on the side toward him and he stepped back a step which put him on the main track; that he saw the cars on the main track south of him but there was no one about them and no engine hitched to them and for this reason he did not think of danger from that direction, but they were shoved upon him unawares; that while the engine was backing down track number one he looked down the track (south) and saw the nine cars still standing on the main track about thirty feet south of him; that at the time he was struck by the cars he was looking northwestwardly and not toward the south from whence they came, for the reason he apprehended no danger from them.

The evidence for plaintiff shows that no whistle was sounded or bell rung when the engine started to couple on to these nine cars; that there was no brakeman on these cars, that the conductor was at the depot and the switching was being done under the direction of the brakeman who was on the ground but failed to see if the crossing was clear before he signalled the engineer to back up for the purpose of coupling onto the cars.

Plaintiff further testified that he did not go across track number one for the reason it was not clear at the time he was struck; that he had been standing on the main track about a minute before he was struck; that Lyman Eddington was standing near him, between the main and track number one, and was not hurt.

The evidence shows that the engineer in charge of the engine did not see plaintiff and he was not seen by anyone of the trainmen until after he was knocked down and run over; that persons at and near the depot saw his peril and hallooed to plaintiff but did not make him hear.

Plaintiff read in evidence, over the objection of defendant, the following city ordinance of the city of Piedmont:

"SECTION 31. *Bell to be Sounded at Street Crossings.*—The engineer or other person in charge of any engine or train of cars while running the same through the city of Piedmont, shall sound the bell or cause the same to be sounded upon approaching any street crossing and keep the same ringing until the engine shall have crossed the same, and no train of cars from which the engine has been detached, shall be run through the city without having a person placed at the front end of such train of cars, who shall keep a close lookout, and in the night he shall carry a signal lamp so as to give warning to any person of the approach of such car or train of cars. And any engineer, conductor or other person in charge of any engine, car or train of cars who shall fail to comply with the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction, shall be fined not less than five nor more than one hundred dollars for each and every such offense."

The evidence of the defendant shows that as the engine backed upon the main track to couple onto the nine cars left standing there, the bell was constantly rung; that there was no intention of backing over the crossing. The purpose of the engineer was to couple onto the cars, pull them off the main track, take them down into the yard and go back upon the house track to get the caboose which had been left at the freight house. Defendant offered evidence of declarations made by plaintiff just after he was injured that no one was to blame but himself. This evidence was refuted by evidence offered in rebuttal. At the close of all the evidence the defendant moved the court by an appropriate instruction to nonsuit the plaintiff. This the court refused to do and sent the case to the jury who found for plaintiff and assessed the damages at $2,500. After taking the usual preliminary steps, defendant appealed.

BLAND, P. J. (after stating the facts.)—1. The introduction of the city ordinance was objected to by defendant. The ordinance was a police regulation binding upon defendant and its non-observance by it was evidence of negligence.    Hutchinson v. Railway, 161 Mo. 246; Weller v. Railway, 164 Mo. 180; Gebhardt v. St. Louis Transit Company, 97 Mo. App. 373; Riska v. Railroad, 79 S. W. 445.

2.    The demurrer to the evidence raises two questions of law to be disposed of.  First, was plaintiff's evidence sufficient to warrant the jury to find that defendant was guilty of negligence? Second, if it was, does plaintiff's evidence convict him of such contributory negligence as to preclude his right of recovery? The evidence shows that it was not the purpose of defendant's servants to back the nine cars over the street crossing where plaintiff was standing, yet as a matter of fact they did back over the crossing, and the evidence shows also that from the near proximity of the cars to the crossing and the ordinary movement of such cars when an engine is backed up for the purpose of coupling onto them, these servants should have anticipated that the cars would probably pass on over the crossing, and it was their duty to observe the requirements of the city ordinance by sounding the bell as the engine backed up to make the coupling.  Plaintiff's evidence shows that this was not done; if not, such non-observance of the ordinance was negligence per se.  Jackson v. Railway, 157 Mo. 621; Hutchinson v. Railway, supra; Edwards v. Railway, 94 Mo. 36; Mercer v. Railway, 44 S. W. 750; Railway v. Taff, 74 S. W. 89; Railroad v. Baker, 106 Ill. App. 500.  Independent of the ordinance, if, as the evidence shows, the railroad tracks crossed a public street in a city built up on both sides of the railroad, it was negligence to back cars over the crossing without either ringing the bell or sounding the whistle.  Section 1102, Revised Statutes 1899; VanNote v. Railroad, 70

Mo. 641; Alexander v. Railroad, 76 Mo. 494; Crumpley v. Railroad, 98 Mo. 34; Hanlon v. Railway, 104 Mo. 381; Lloyd v. Railway, 128 Mo. 595. We think the plaintiff's evidence shows that the company's servants were guilty of negligence that caused plaintiff's injury.

3.  Did the plaintiff convict himself of negligence that directly contributed to his injury, is the second question to be disposed of. What constitutes negligence, or contributory negligence, is, as a general rule a question of fact for the jury and where the facts, with respect to the negligence of the party, are such that reasonable minds might differ as to their effect, the question of negligence is a question of fact for the jury. Doyle v. Trust Co., 140 Mo. 1; Maus v. City of Springfield, 101 Mo. 613; Fulks v. Railway, 111 Mo. 335; Barry v. Railway, 98 Mo. 62; Tabler v. Railway, 93 Mo. 79; Kinney v. City of Springfield, 35 Mo. App. 97; Covell v. Railway, 82 Mo. App. 180; Owens v. Railway, 84 Mo. App. 143. It is only where the facts are of such a character that all reasonable men must draw the same inference that it becomes the duty of the court to decide the question of negligence as one of law. Eichorn v. Railway, 130 Mo. 575; O'Mellia v. Railway, 115 Mo. 205; Becke v. Railway, 102 Mo. 544; Thompson v. Railway, 86 Mo. App. 141; Zellars v. Mo. Water & Light Co., 92 Mo. App. 107. The evidence shows that plaintiff was looking northwardly or northwestwardly when the car struck him; that if he had been looking to the south, the direction from which the train came, he could have seen the movements of the train in time to have stepped off the track and avoided the injury. In the light of this evidence it is contended by defendant, that being on a public crossing plaintiff's failure to look for an approaching train was such contributory negligence as to preclude his right of recovery, and in support of this contention cites some of the numerous cases holding it to be the duty of one, before he attempts to cross a railroad track over a public highway, to look and listen

for an approaching train. The plaintiff's situation was not that of one about to cross over a railroad track on a public highway. He was standing on the track waiting for the clearing of another track eight or ten feet in front of him that he might proceed over the latter track. He had taken that position, as he says, to avoid steam emitted from an engine that had passed over the track about a minute before he was struck. The cars standing a few feet south of him and on the same track, he had observed and saw they were not coupled to an engine. They could not move of themselves. They were stationary and could do plaintiff no harm and he had a right to presume that if an engine was coupled to them to push them over the crossing, the defendant's servants would obey the statute by ringing the bell or sounding the whistle and thus give him warning in time to get off the track. Riska v. Railway, supra. He testified that he did not apprehend any danger from these cars and it can not be said, as a matter of law, that he did not exercise ordinary care, in view of all the circumstances by which he was surrounded. A very prudent man would perhaps have stepped off the track as soon as the danger of having steam blown upon him from the engine on track number one was passed, and avoided the possibility of being injured by the cars on the main track, and the failure of plaintiff to step off the track immediately after the engine passed him may indicate that he was somewhat negligent. But these facts do not warrant a court, as a matter of law, to convict him of the lack of the exercise of ordinary care. The question, as to whether or not he was negligent, we think was a question of fact for the jury. This question was submitted to the jury on instructions very favorable to the defendant, more favorable we think than the evidence warranted.

4. For the plaintiff the court gave the following instruction:

"The court instructs the jury that although you

should believe from the evidence that plaintiff was guilty of having placed himself in a dangerous position and was negligent in failing to observe the approaching train, yet, if defendant's servants, operating said train, saw plaintiff was in a dangerous situation, or by the exercise of reasonable care on their part, might have discovered his dangerous situation in time to have averted the injury by using ordinary diligence then your verdict should be for the plaintiff.''

All the evidence shows that the engineer in charge of the engine did not see and could not have seen the plaintiff from his place on the engine at any time after he started to back up on the main track to couple onto the nine cars standing on the track. There was, therefore, no evidence upon which to base this instruction. But we do not think the giving of the instruction was prejudicial to the defendant for the reason that the failure of defendant's servants to see that there was no one on the crossing to be hurt before backing the engine onto the crossing was in itself, in the circumstances, an act of negligence and opposed to the careful and usual practice of engineers operating cars on defendant's road as shown by the evidence of Rome Politte, one of defendant's engineers, called as a witness in its behalf, who testified that when an engineer backs up to take on eight or ten cars standing near a crossing, he always looks to see if there is anything or anybody on the crossing. The negligence of defendant being thus shown by the evidence of both parties, the only mooted question of fact in the case was whether or not plaintiff was guilty of contributory negligence. The jury found this issue for the plaintiff, under instructions extremely favorable to the defendant. In these circumstances we do not think the instruction on discovered peril was at all prejudicial.

Judgment affirmed. *Reyburn* and *Goode, JJ.*, concur.