ST. LOUIS-SAN FRANCISCO RAILWAY CO. ET AL. v. FOWLER.

4-4853

Opinion delivered December 6, 1937.

J. W. Jamison, E. L. Westbrooke, Jr., and E. L. West-brooke, for appellants.

T. E. Abington, Richardson & Richardson, W. A. Jackson and Tom W. Campbell, for appellees.

BAKER, J. This is an appeal from three separate verdicts and judgments rendered thereon against the appellants named in the caption. The three separate cases arose out of the same accident, were consolidated for trial, heard upon the same evidence in all respects, except in regard to the injuries suffered.

In September of 1936, early in the cotton picking season, a number of young people banded themselves together and went from White county to a point near Kennett, Missouri, where they were engaged in picking cotton, until the date of the accident causing these suits.

On September 23, William Fowler, with eight others, drove from Kennett, or near that point, east through Hayti, Missouri, to Caruthersville to a picnic and later, on the same day, returned over the same route to Hayti, Missouri, where the accident occurred. It was late in the afternoon, getting "dusky-dark," as many of the witnesses described the time, as the truck loaded with these young people was driven along the paved highway to the railroad crossing in the town of Hayti.

Several witnesses testified that at the intersection of the highway and railroad, the rails and crossties are so buried in the concrete that a traveler who is unacquainted with the locality would approach very near to this crossing before the railroad could be observed. The only thing that marked this crossing, apparent from any great distance, was a sign required by statute to be placed at the intersection of highways with the railroads, described by law as being "boards, such as to be easily seen by travelers and having printed on each side thereon, in letters at least the size of nine inches each the words 'railroad crossing'."

This party of young people were unfortunate in having a collision with the train upon this crossing at Hayti, wherein the driver, William Fowler, was so in-

jured that he died shortly thereafter, and Eunice Gammill and Pauline Gage were each injured.

The negligence alleged by the plaintiffs was that the usual or statutory signals, such as the sounding of the whistle and the ringing of the bell, were not given as the train approached the crossing and that the sign mentioned above, which marked the crossing, was placed on the opposite or west side of the railroad from the point of approach by the picnickers, distant from the actual intersection twenty-five to thirty feet and eleven feet south of the south line of the pavement.

The view that we have of this matter upon appeal is such that there can be no substantial advantage gained by an effort upon our part to recite the evidence given upon this trial in detail, that it is only necessary to make a statement of facts and conclusions inferable when presented most favorably to sustain the verdicts of the jury. Appellees are entitled to this consideration. *Reed* v. *Baldwin,* 192 Ark. 491, 92 S. W. 2d 392. This view is accepted without reservations, and supported by a long list of authorities.

The truck was traveling upon the highway in a westerly direction as it approached the railroad tracks. It had reached a point fifteen or twenty feet distant from the tracks when someone observed the train approaching from the north about thirty feet distant from the intersection of the highway and railroad, but traveling at a higher rate of speed than the truck. It is argued that the train could not be seen by those upon the truck until they were within the danger zone although traveling at a moderate speed and there is evidence to support this contention, for they say that on the north side of the highway houses and trees approach to within a short distance, variously stated from fifteen to fifty or sixty feet, of the railroad tracks. It was also testified, not only by those who were upon the truck, but by others who were in close proximity to this railroad crossing that the train approached the crossing at the same time without ringing the bell or sounding the whistle.

A cry of alarm was given, calling attention to the approach of the train. The driver of the truck attempted to turn to the north in an effort to avoid a collision on the crossing. The train was one consisting of about three cars or coaches, with a standard headlight upon the rear end. It was backing toward this crossing with a brakeman upon the rear end, moving toward the south. The truck was turned just far enough, in the effort to avoid a collision, to strike the rear end of the first coach, that is to say, that what was then the front end of the coach had passed over the intersection and the collision occurred by the contact between the front of the truck, at or near the point where the head coach was coupled to the coach following.

There is not much evidence tending to show the violence of this contact or collision except photographs which show very little effect upon the train at the point where it was hit, although the front of the truck was apparently practically destroyed.

No question has been raised about the extent of the injuries of any of the parties. William Fowler died a few hours after the accident as a result of his injuries. There is no contention that verdicts in favor of the two young women were excessive. There is no reason for details in that respect.

The only controversy about the law is the contentions of appellants that all instructions were erroneous because there was no liability.

Let it be said that there was a sharp controversy as to the material issues. Parties interested and others who had no interest whatever in the result of the suit testified positively that the whistle was not sounded; that the bell was not rung as the train approached the crossing. It is also contended that the standard or sign required to be placed at the intersection of the highway with the railroad was so located as to be out of the range of vision of those approaching the railroad from the east side. A part of the evidence presented in regard to this sign is brought to us by photographs. The

actual location of the sign, however, is shown by testimony of at least one witness who made measurements.

Parties have presented us with rather elaborate briefs, but both agreeing upon the proposition that, since the accident occurred in the state of Missouri, rights and liabilities of the parties must be determined under the law of that state, though the procedure will be governed by the laws of the forum.

It is not denied that the accident occurred, nor that the parties were injured, but it is urged, strongly argued that the plaintiffs were guilty of contributory negligence and that under the law of the state of Missouri contributory negligence is a complete defense.

It is argued that the truck was driven into the side of the train of cars and that this in itself is incontrovertible proof of the negligence of the driver of the truck and, further, that as they were engaged in a joint enterprise, his negligence is imputable to all those in the party. As just stated, without explanation as to the manner in which the accident occurred, the declaration seems to have some basis for the contention, but it has already been shown that the driver of the truck was apparently using every possible means to avoid or keep from entering upon the crossing and that the impact, between the truck and the coach, was perhaps made more severe by the fact that the two were moving at the time of the collision in opposite directions. The driver of the truck was seeking to avoid a collision and to extricate the truck from a seriously dangerous position in which it was by reason, they contend, that due warning was not given by the approaching train. Neither the train nor the truck was upon the crossing when the peril was discovered. The survivors of this accident, and others nearby who saw it, told their story as to how the accident occurred and the correctness and reasonableness of this explanation was one to be determined by the jury rather than to be settled as a matter of law. Otherwise stated, the contentions were not free from dispute or controversy, but were questions of fact.

Appellants cite many cases illustrative of the defense of contributory negligence. It appears to us that it cannot be really necessary to take these numerous cases and analyze them separately and distinguish them from the one now under consideration. An examination of all the cases presented by appellants shows not only that they are cases well reasoned and clearly stated, but each one also presents, sharply defined, the negligent act of the injured party who was denied relief on account thereof. They are sound in principle, considered under the same or similar facts. But they do not warrant the conclusions reached by the appellants. Such cases as *Kelsey* v. *Railroad,* 129 Mo. 362, 30 S. W. 339; *Burge* v. *Railroad,* 244 Mo. 76, 148 S. W. 925; *State ex rel. Kansas City So. Ry. Co.* v. *Shani,* 105 S. W. 2d 915; *Osburn* v. *Railroad,* 179 Mo. App. 245, 166 S. W. 1118; *Underwood* v. *Railroad,* 182 Mo. App. 252, 168 S. W. 803; *Nichol* v. *Railroad,* 250 S. W. 627, and numerous other cases cited by appellants are highly illustrative of the contention they make, but all are conclusive of only one proposition and that is that contributory negligence in crossing accident cases constitutes a complete defense.

A study and analysis of all these cases, however, show that the injured party who sued for damages was approaching or entering upon the crossing that was well marked or defined, easily seen from a distance, or one with which he was well acquainted and knew its exact location, or one about which he had so much information that he knew the time the trains passed the particular point and of the dangers incident to his entry upon the intersection, or that he approached the crossing in daylight when conditions were easily and readily observed in time to avoid the injury upon the crossing, or that such victims of accident had, without regard to open and apparent markers, entered into the place of peril without seeing what could easily be seen, without hearing what all others could hear, and without regard to dangers apparent to anyone in the exercise of ordinary care for his own safety.

From the foregoing it is apparent that appellees did not approach the crossing at Hayti under any of the conditions above stated. They approached it when it was getting dark, at least dark enough that the intersection or crossing was not apparent until they were very close to it, in a community in which they were strangers approaching a grade crossing for the first time from that side, without any known landmark, or recognizable conventional crossing sign "easily seen by travelers," or other timely warning of threatened disaster. It is argued that the law requires only one of these crossing signs. We agree that such is the mandate of the statutes ('C. & M. Dig., § 8488), but appellants must regard such requirements more in the light that they are the minimum in regulation that can be tolerated, and so place such signs that they are "easily seen by travelers." We think it must be agreed the location of the only marker was debatable. *Jackson* v. *Ry. Co.*, 189 S. W. 381, 383.

Suddenly, the driver and his companions found themselves confronted with a dangerous situation, at a time too late to avoid a collision.

Under such conditions, as have just been stated, the tribunals of our sister state have not declared as a matter of law, in any case brought to our attention, that the unfortunate victims are guilty of contributory negligence.

In the case of *King* v. *M. P. Rd. Co.*, 98 Mo. 235, 11 S. W. 563, we find a case wherein a man named King was traveling upon a highway with a team and wagon. He entered upon a public crossing near Carthage, Missouri. There was an alleged failure of the servants in charge of the train to ring a bell or sound a whistle, as required by § 806 of the Revised Statutes of Missouri and the railroad company had also failed to place or maintain a signboard at the crossing. It was shown that King had never before traveled over that particular road and was unacquainted with this crossing; that the railroad could not be seen from the public road until within a few feet of the railroad track. Upon proof of these facts, when

the case was closed, the defendants, as is the custom in that jurisdiction, demurred to the evidence, which is but another way of asking, as our practitioners do in our own jurisdiction, for a peremptory verdict. This demurrer, so made, was not sustained by the trial court and upon appeal the appellate court said: "Under the evidence, taken as a whole, the jury might well have concluded that there was no negligence on the part of the deceased, contributing to his death."

In the case of *Donohue* v. *St. L. I. M. & S. Ry. Co.*, 91 Mo. 357, 2 S. W. 424, 426, the Supreme Court of Missouri said:

"Neither seeing nor hearing a train, nor the sound of a bell, for none was rung, the deceased had a right to presume that he could pursue his course without danger. What is said in the case of *Kennayde* v. *Pac. R. Co.*, 45 Mo. 255, may be appropriately applied here. It is there said: 'The citizen who, on a public highway, approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous.' "

The court also added as one of the concluding thoughts to its own opinion this statement:

"When the laws are broken and defiled, and homicides are recklessly committed it is no part of the business of courts to hunt up excuses, or seize upon technicalities for the purpose of shielding the wrong-doers."

Although the numerous cases cited by appellant to the effect railroad tracks or railroad crossings are danger signals and in themselves warnings to all those who enter upon them, yet it was not inconsistent for the Missouri courts to hold, as they have, that a "person crossing a railroad has the right to assume that the statutory signals will be given, and so act." *Crumpley* v. *Hannibal & St. Joe R. Co.*, 111 Mo. 152, 19 S. W. 820.

It was also held that when a traveler, on account of obstruction upon a railway right-of-way, could not have seen the train as it approached the crossing until he was within a few feet of the tracks and that no signals were

given he was not guilty of contributory negligence as a matter of law. *Harshaw* v. *Railway*, 173 Mo. App. 459, 159 S. W. 1.

See, also, *State ex rel. Quincy, O. & K. C. R. Co.* v. *Trimble*, 254 S. W. 846, where the Supreme Court in effect made the same announcement as that stated above. See, also, *Jackson* v. *Railroad*, 189 S. W. 381, 383.

These cases are sufficiently illustrative of the principle that a traveler may not be guilty of contributory negligence as a matter of law when he enters upon a railroad crossing or approaches so nearly as to be in danger in the night time and at a place where he is unacquainted and when he is proceeding with due care for his own safety, nor can he be charged with contributory negligence as a matter of law because he did not hear a whistle that was not sounded or a bell that was not rung. We cite several cases illustrative of the principles that must govern and control the rights of the appellees and fix the liability of the appellants. *Kennayde* v. *Ry. Co.*, 45 Mo. 255; *Reed* v. *Ry. Co.*, 107 Mo. App. 238, 80 S. W. 919; *Sisk* v. *Chicago B. & O. Ry. Co.*, 67 S. W. 2d 830; *State ex rel. Quincy, O. & K. C. R. Co.* v. *Trimble*, 254 S. W. 846.

Since the appellees may not be held as a matter of law to be guilty of contributory negligence, under all the circumstances in proof, it was not improper to submit that question to the jury for its consideration and decision. That was properly done and the jury has determined the question of fact adversely to appellants' contentions.

We are not concerned on appeal with the amount or quality of evidence necessary to support the verdict rendered by the jury. Such questions belong to the law of the forum and are primarily for the trial court. The verdicts are supported by substantial testimony.

There is no error. The judgments are affirmed.