Carter H. Harrison, as Mayor, etc., et al., v. The People of the State of Illinois ex rel., etc.

92   643
a191s 257
92   643
106   508

1. STATUTES—*General Rules of Construction.*—In the construction of statutes, all general provisions, terms, phrases and expressions are to be liberally construed in order that the true intent and meaning of the legislature may be fully carried out. (R. S., Chapter 131, Section 1.)

2. SAME—*When Absurd Consequences Will Result from a Particular Construction.*—When the literal enforcement of a statute will result in great inconvenience, cause injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity.

3. SAME—*As to Things Not Within the Letter of the Statute.*—Things within the intention of a statute are to be regarded as within it, although not within the letter, and things within the letter are not to be regarded as within the statute unless they are within the intention.

4. SAME—*When Provisions are to be Construed Together.*—The general provisions of a statute are to be construed together in the light of the general objects and purposes of its enactment, and so as to give effect to the main intent, although particular provisions are thus construed not according to their literal reading.

5. SAME—*Intention of the Law-Makers to be Gathered from the Necessity of the Enactment.*—The intention of the law-makers in the enactment of a statute is to be gathered from the necessity or reason of the enactment, and the meaning of its words enlarged or restricted according to its true intent.

6. SAME—*Implied Provisions, When to be Considered.*—That which is implied is as much a part of a statute as that which is expressed.

7. SAME—*Duty of the Courts in Determining the Meaning of a Statute.*—In determining the meaning of a statute the courts will have regard to existing circumstances, or contemporaneous conditions, and also to the objects sought to be obtained by the statute, and the necessity or want of necessity for its adoption.

8. ORDINANCES—*Of Hyde Park Relating to the Sale of Intoxicating Liquor Construed.*—In the opinion of the court it was the intention of the legislature and of the lawfully constituted authorities of the village

of Hyde Park as well, that there should be preserved to the territory of said village annexed to the city of Chicago, all of the liquor ordinances of the said village in force at the time of its annexation, for all time to come, except as they provide for a change therein, and that as such ordinances they are by said act of annexation placed beyond repeal by the city of Chicago.

Mandamus.—Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed, with directions. Opinion filed January 15, 1901.

Charles M. Walker, Corporation Counsel, and R. B. Mason, Assistant Corporation Counsel, attorneys for appellant; Walker & Payne and Edwin Burritt Smith, of counsel.

Moran, Mayer & Meyer, attorneys for appellee; T. A. Moran, of counsel.

Mr. Presiding Justice Shepard delivered the opinion of the court.

This is an appeal from an order of the Circuit Court granting a peremptory writ of mandamus to compel the mayor and certain other officers of the city of Chicago to approve the relator's bond, and to sign and deliver a license to him, authorizing and permitting the said relator to sell and offer for sale within the city of Chicago, at his premises on Cottage Grove avenue (within what is known as the prohibition district of the former village of Hyde Park) malt liquors in quantities of one gallon or more at a time, and there to carry on the business of a wholesale malt liquor dealer.

· The petition for the writ set forth that the relator had resided in and carried on at the said premises, constituting a store or place of business, for more than seven years last past, a meat market and grocery business, and during said time was not a brewer or engaged in any other business, except as aforesaid.

No question is raised by appellant as to the sufficiency of the allegations of the petition to entitle the relator to the

mandamus prayed for, if under the law he is entitled to a license at the place in which he conducts his business.

The answer filed in behalf of the respondents raises no issue of fact, and the case was determined by the Circuit Court as a matter of law arising on the pleadings.

It was recited in the decree or judgment of the court:

" The relator and each of the respondents herein, by their respective counsel, having heretofore stipulated and agreed in open court that this cause should be heard by this court on the pleadings now on file, and that no evidence shall be introduced on the hearing of this cause; that the material facts, as alleged in said petition, shall be taken as true, except that it is not admitted by the respondents that the ordinances, with their amendments, of the village of Hyde Park, set forth in the petition herein, are no longer in force and effect; and that the court, from the pleadings on file, shall determine as a question of law whether the relator is legally entitled to a writ of mandamus, or whether the respondents are legally justified in refusing to grant the license, as prayed for in said petition."

The ordinance under which the relator applied for a license was passed by the city of Chicago, and approved April 9, 1897, being Art. 3, Chap. 39, of the Revised Code of the city of Chicago.

The village of Hyde Park was annexed to the city of Chicago June 29, 1889, under and in pursuance of an act of the General Assembly of the State to provide for the annexation of cities, etc., commonly known as the "annexation act," approved and in force April 25, 1889.

Section 18 of that act is as follows:

" When a part or the whole of an incorporated town, village or city, is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issue of licenses to keep dram-shops within said territory so annexed, or any part thereof, or providing that such licenses shall not be issued except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shops, then such ordinance shall continue in full force and effect, notwithstanding such annexation : Provided, the city council or board of trustees, as the case may be, may on petition of one-fourth of the voters of the terri-

tory over which said ordinance extends, submit at an annual municipal election, but not oftener than every other municipal election, the question to the voters of such territory whether or not an ordinance shall be passed authorizing the issuing of dram-shop licenses for such territory. And, provided, further, that upon petition in such case of one-fourth of the voters, within any part of said annexed territory not less than one-half square mile in extent, asking that any such ordinance shall be continued in force in said portion of said annexed territory, said question of issuing dram-shop licenses shall be submitted separately to the voters of said portion of said annexed territory, and if a majority of the voters voting on such question vote against dram-shops, then said ordinance shall continue in force in said portion of said territory; otherwise, not. The ballots cast at such election shall be written or printed, or partly written and partly printed, ' For Dram-shops,' or ' Against Dram-shops,' respectively, and shall be received, canvassed and returned the same as ballots cast at said election for municipal officers, and if it shall appear that a majority of the voters so voting upon the question vote ' For Dram-shops,' then licenses may be issued for said territory on the same terms and conditions as licenses are granted by ordinance within other parts of the municipality. It is intended by this section to continue in full force and effect all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of such ordinance by the city, village or incorporated town to which the territory is annexed."

It is set up in the answer of the respondents, that section eighteen of the annexation act was passed by the legislature with reference to the annexation of Hyde Park, and the protection of its inhabitants in the security afforded to them by the liquor ordinance of that village. But it is in effect argued by the relator that by the terms of that act such ordinances were in fact impaired to the extent of preserving only the licensing, prohibiting and regulating of dram-shops, as such.

At, and before the time Hyde Park was annexed to Chi-

cago, there were in force in that village certain ordinances placing restrictions upon the liquor traffic within its boundaries. These are shown in chapter 15 of the revised municipal code of the village (consisting of twenty-one sections), entitled "Dram-shops," and in two amendments thereto, which became laws on May 8, 1889, and June 24, 1889. This last amendment became a law only five days before annexation was accomplished. Without reproducing these several ordinances and amendments, it is enough to say of them that before the annexation of Hyde Park, and while they were unquestionably in force, it would not have been possible for a license such as is here involved to have been granted.

The gist of the argument of the relator is based upon the proposition that only the provisions of the Hyde Park ordinances prohibiting and regulating the licensing of dramshops were kept in force by the annexation act. We are free to admit that in the absence of countervailing legislation, the ordinances of Chicago, upon the annexation of Hyde Park, *eo instanti*, of their own vigor, extended to and became operative over the annexed territory, and that from that instant the territory annexed became a constituent part of the city and subject to the same laws, the same municipal organization and the same polity which the statutes in force had already provided for the government of the city and its institutions. McGurn v. Board of Education, 133 Ill. 122; People ex rel. v. Cregier, 138 Ill. 401.

Of course, such being the law as to the extension of existing ordinances over annexed territory, subsequent ordinances of the city to which annexation has been made would have at least equal vigor over the annexed territory, in the absence of a statute saving to such territory the force of its own former ordinances.

At the time Hyde Park was annexed there was in force in Chicago an ordinance of that city passed January 29, 1883, regulating the sale of ale, beer or other malt liquors in quantities in excess of one gallon at one time, and the contention of the relator is that that ordinance became at

once operative in the annexed district of Hyde Park, and governed in that regard until the passage by the city of Chicago, on April 9, 1897, of an ordinance relating to the licensing of wholesale malt liquor dealers. That ordinance permitted the selling by grocers of malt liquors in quantities of one gallon, or more, at a time, they first having obtained a license therefor. And it is under that ordinance that the relator has asked for the mandamus in question.

The question then recurs, did section 18 of the annexation act keep in force the ordinances of Hyde Park relating to the subject in controversy.

Coming to read the ordinance of Hyde Park, as embodied in chapter 15 of its revised code of 1887, and the ordinances amendatory thereof, it is apparent that the whole subject of liquor traffic within the limits of that village was covered, and not merely the keeping of dram-shops. They provided for the creation of prohibition districts (and the place in question is included therein) within which no license for the keeping of a saloon or dram-shop could be granted; and prohibited the granting of licenses anywhere in Hyde Park for the sale of liquor in quantities less than four gallons in a single package, except at a regularly licensed saloon or dram-shop. They also provided for the licensing of wagons for the delivery of beer and other liquors in quantities not less than one gallon in a single package to one person. There are numerous other provisions not necessary to be mentioned.

Now, is it reasonable to suppose that the legislature intended by section 18 of the annexation act to sweep away all these provisions except so far as the regulation and enforcing of the keeping of a saloon or dram-shop is concerned? That act was passed in April, 1889, about two months before annexation took place. The amendatory ordinances of Hyde Park, which are of particular applicability to the subject, were passed May 8, 1889, and June 24, 1889. Annexation took place June 29, 1889.

It appears by the answer of the respondents that the annexation act " was passed by the legislature with refer-

ence to the ordinances of the village of Hyde Park, and more especially to Chapter XV of the revised municipal code of the village of Hyde Park, 1887, as amended by the amendments of May 8, 1889, and June 24, 1889." The concluding part of said section 18, as before quoted, is as follows:

" It is intended by this section to continue in full force and effect, all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of such ordinance by the city, village or incorporated town to which the territory is annexed."

The word " whereby," there employed, is not intended to limit the effect of the saving clause of the section to dramshops, as such, alone, but means all ordinances entitled " Dram-shops." " Dram-shops" as used in that connection is generic, and means the liquor traffic generally.

Chapter 43 of the Revised Statutes is entitled " Dramshops," and is a single chapter relating to the liquor traffic generally. As used in that connection the word includes in its meaning all matters there enacted with reference to licensing and regulating the evils arising from the sale of intoxicating liquors, as appears by the title of the act shown in the statute. (Chap. 43, Hurd's R. S. 1899.)

And so, in the fore part of the section, the provision that " such ordinance shall continue in full force and effect," means the whole of the ordinance and not a special section of it.

In accordance with this view the Supreme Court, when considering the same section, said :

" It was expressly declared to be the intention of said section to continue in full force and effect all ordinances of any municipality, the whole or part of which should be annexed to the city, whereby the licensing of dram-shops was prohibited or regulated in the annexed territory, until the voters of the territory affected by the ordinance should consent to its repeal." People ex rel. v. Cregier, 138 Ill. pp. 401–3.

In the same case (p. 423) the court holds that there is no possible ground for doubting the applicability of section 18 to the ordinances of Hyde Park in force at the time of the annexation, and that they were continued in force notwithstanding the annexation, and were placed beyond repeal by the city council of the city of Chicago.

Any other holding by us than that the whole ordinance was meant by the statute would lead to absurd and most mischievous consequences.

The answer of the respondents expressly set up that the statute was passed with reference to the annexation of Hyde Park.

The purpose of the section being to secure to Hyde Park its prohibition districts, and to secure and regulate the liquor traffic within its territory, that object should be kept in mind, and words used in the statute should be construed liberally, to that end.

We are not without abundant authority on this question. The statutes of the State provide, with reference to the construction of the statutes:

" All general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out." First paragraph of Sec. 1, Chap. 131.

So, it is said, in People v. Wren, 4 Scam., at page 277:

" It is a well-established rule in the construction of statutes that where great inconvenience or absurd consequences are to result from a particular construction, that construction should be avoided, unless the meaning of the legislature be plain and manifest."

In People v. City of Chicago, 152 Ill. 546, the rule is stated as follows:

" It may be well to here call attention to some of the rules which should influence the court in interpreting the statute now in question. The General Assembly, in the act revising the law in relation to the construction of the statutes, lays down as the first rule to be observed, the following: ' All general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried

out.'  (2 Starr & Curtis, Chap. 131, Sec. 1.)  A thing within the intention is regarded as within the statute, though not within the letter, and a thing within the letter is not within the statute unless within the intention.  (Perry County v. Jefferson County, 94 Ill. 214; People v. Hoffman, 97 Id. 234; Anderson v. Chicago, B. & Q. R. R. Co., 117 Id. 26.) The several provisions of the statute should be construed together in the light of the general objects and purposes of the enactment, and so as to give effect to the main intent, although particular provisions are thus construed not according to their literal reading.  Hill v. Harding, 93 Ill. 77; Wabash, St. L. & Pac. Ry. Co. v. Binkert, 106 Ill. 298.

The intention is to be gathered from the necessity or reason of the enactment, and the meaning of words enlarged or restricted according to the true intent.  (Castner v. Walrod, 83 Ill. 171; Cruse v. Aden, 127 Ill. 231.)  That which is implied is as much a part of the statute as that which is expressed.  (Potter's Dwarris, 145; United States v. Babbit, 1 Black, 55.)  When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity.  Bryan v. Buckmaster, Breese, 406; People v. Marshall, 1 Gilm. 672."

In People v. Kipley, 171 Ill., at page 77, the court says:

"In determining the meaning of a statute the court will have regard to existing circumstances, or contemporaneous conditions, and also to the objects sought to be obtained by the statute and the necessity or want of necessity for its adoption."

The late expression of the Supreme Court in Hogan v. Akin, 181 Ill. 448, by Chief Justice Cartwright, is:

"It is true, we can not disregard a provision of that kind appearing to be within the intention of the law-makers, but the purpose of construction is to find and give effect to such intention.  *  *  *  In seeking for such intention we are to consider not only the language used by the legislature, but also the evil to be remedied and the object to be attained."

There can not, in our opinion, be any doubt it was the intention of the legislature, and of the lawfully constituted authorities of Hyde Park as well, that there should be pre-

served to the annexed territory all of the Hyde Park liquor ordinances in force at the time of annexation, for all time to come, except as they provide for a change therein, and that, as said in the Cregier case, *supra*, they were placed beyond repeal by the city of Chicago.

We agree with the contention of counsel for the relator that mandamus is a proper way to test the question, and was an appropriate remedy for the relator.

The argument that the amendatory ordinance of Hyde Park, passed June 24, 1889, is void, because of making an unjust discrimination between persons who may sell liquor in less quantities than four gallons in a package, does not seem to us to require particular answer. It deprives relator of nothing he asks for that he has an inherent right to.

The judgment or order of the Circuit Court is reversed with directions to dismiss relator's petition.

·Reversed, with directions to dismiss petition.