## Chicago & Alton Ry. Co. v. Reuben Corson, Jr., Adm., etc.

| 101 | 115 |
| a198s | 98 |
| 101 | 115 |
| 106 | ²503 |

1. RAILROADS—*Where the Failure to Ring a Bell or Sound a Whistle is the Cause of an Accident—Verdict Conclusive.*—Where the evidence upon the question of ringing the bell or sounding the whistle, as required by the statute, is conflicting, it is the peculiar province of the jury to determine the fact, and in such state of evidence it is not the rule to disturb the finding, in the absence of prejudicial rulings on the evidence or instructions, but the verdict is to be accepted as decisive of such question.

2. NEGLIGENCE—*Of Persons in Positions of Peril.*—If a person is placed by the negligence of another in such a position that he is compelled to choose instantly, in the presence of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in a similar position might make, the fact that if he had chosen the other hazard he would have escaped injury, is of no importance; even if in his bewilderment he runs directly into the very danger he seeks to avoid, he is not at fault.

3. VERDICTS—*When To Be Sustained.*—Unless the court can see that a verdict is plainly against the evidence, or the result of passion or prejudice, or a misconception of the proper effect of the evidence, it should not be disturbed because the person injured might be imagined to be in fault, or that it is not supported by the evidence, especially when it is apparent that the negligence of the defendant brought about the confusion of mind that led to the false step of the deceased.

4. EVIDENCE—*Photographs, When Properly Rejected, Incompetent.*—When photographs are taken so long after the occurrence of an accident that the natural surroundings have changed, they are properly rejected.

**Trespass on the Case.**—Death from negligent acts. Appeal from the Circuit Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed February 19, 1902.

PATTON, HAMILTON & PATTON, attorneys for appellant; WILLIAM BROWN, of counsel.

JAMES M. GRAHAM, attorney for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This suit was an action on the case by the appellee as administrator of Rebecca Corson, against appellant, for causing the death of the intestate by alleged wrongful act, neglect or default of appellant. The declaration contains two counts, the first of which avers that the deceased was killed at a highway crossing in consequence of the train being run at an excessive rate of speed of sixty miles per hour, and the second count avers, in addition to the above, that appellant failed to ring a bell or sound a whistle when approaching the crossing as required by statute, in consequence of which the woman was killed while she was in the exercise of due care for her own safety.

The trial by jury ended in a verdict of guilty against appellant, the damages having been assessed at $4,500, and the court, after having overruled appellant's motion for a new trial, gave its judgment against it, from which this appeal is prosecuted. The errors urged upon our notice for which a reversal of the judgment is sought, consist chiefly that the court rejected the photographs of the scene of the accident, refused a peremptory instruction directing a verdict, the verdict is contrary to the evidence and the law of the case, and the court gave wrong instructions, and refused to give certain instructions requested by appellant.

At the instance of the appellant the court instructed the jury, in effect, that the point at which the deceased was struck and killed being outside of a city or village, which was the fact, the defendant could not be held liable for the rate of speed at which the train was running, if the defendant was not otherwise at fault. This was equivalent, we think, to

a direction to the jury to disregard the first count of the declaration, and the issue upon that count will therefore not be further considered, and we will give our attention to the subject of the other count to determine whether the verdict can be sustained under it.

On the morning of September 9, 1900, the deceased, a young woman aged twenty-two years, and a younger brother, started with horse and buggy from their father's residence in the country half a mile east of the railroad, to go to Ashland. The deceased knew the condition of the crossing, and that a train was due about that time, but had no knowledge whether it had passed or not, and the truth was it had not, and was a little late. Corn, hedge and willows obstructed the view of the railroad as it was approached by the parties. When within an eighth of a mile of the crossing a stop was made to determine whether the train was approaching, and not being able to see because of corn, hedge and willows, although the boy stood up for that purpose, and hearing no sounds, the horse was sent in a good trot to make the crossing, and when the horse was within twelve or fifteen feet of the track the train was seen approaching at the rate of forty or fifty miles per hour, whereupon the woman struck the horse with the lines to clear the crossing, but the engine struck between the horse and buggy, throwing the horse on one side, the buggy on the other, and thereby the young woman was killed. The boy, who escaped without injury, testified that he listened for the train, and that there was no whistle blown or bell rung, and it is a clear inference from all the evidence that the deceased heard no sounds of the approaching train, and knew not of its approach until seen by herself and brother. The fireman of the engine testified that he saw the head of the horse when the engine was yet 300 feet away, and no effort was made to stop the train; however, he expressed the opinion such effort would have been futile. The engineer was not a witness in the case. There is conflict of evidence relative to the fact of blowing the whistle or ringing of the bell at the crossing. If the jury believed the

witnesses on the part of the plaintiff the bell was not rung nor the whistle blown, and if they believed the witnesses produced for the defendant, both the whistle was blown and the bell rung. It was the peculiar province of the jury to determine, in such state of conflicting testimony, the fact whether appellant was in default in this respect, and we are unwilling to say that the finding on this point is not supported by the evidence. In truth, we have examined the evidence upon this point, and our conclusion is that it fairly preponderates against appellant. The buggy was stopped, and both the occupants listened, for they could not see, and no sound of the approaching train was heard by them, and it is hardly reasonable that they who were the most interested of all, would fail to hear the bell or whistle, and been warned of approaching danger, if either had been sounded. Here it is not like a case where the injured party neither stopped, looked nor listened, but heedlessly ran upon the crossing. This phase of the case is corroborated by other witnesses who testified the bell was not rung nor the whistle sounded, and these circumstances strongly sustained their statements in this respect. One witness, an eighth of a mile away from the crossing, in a summer kitchen, first noticed the train near the signal post, about a quarter of a mile across the field, and testified that she knew no bell was rung or whistle sounded, because she was standing at the window looking, and that she could not possibly have helped hearing it, and she knew, afterward, there was an accident from having seen the train backing. Another witness was on the road a little over a quarter of a mile away from the train, and noticed it because his horse was scary. When he saw the train it was near the signal post; he was watching and listening and did not hear the whistle or bell, and his hearing was good. In addition to these there were witnesses produced by appellee who were upon the train who testified they did not hear bell or whistle. Opposed to all these was the fireman and several witnesses who were on the train who said the signals were given. The evidence of either side upon this point, standing alone in the record, would sustain a finding for the side to which it might be

given.  In such state of evidence it is not the rule to disturb the finding, in the absence of prejudicial rulings on the evidence or instructions, but the verdict is accepted as decisive of the issue tried.

It is said, however, that the deceased should have again stopped when she reached the right of way, where the view was freed from the surrounding foliage, and then again looked and listened; and failing to do this, she was not in the exercise of ordinary care for her own safety.  This, of course, would have been the safe way, but the deceased is to be judged by what an ordinary person would do under the same circumstances, and this was a question of fact for the jury.  What is or is not negligence is always a question of fact for the jury.  Failing to hear the sound of the train when she did stop, failing to hear it at any time after she started to the crossing, having no knowledge of its approach until it was seen while she was near the track—and thus being confronted by imminent peril, upon the impulse she did, of course, the most dangerous thing that was possible—attempted to cross in front of the engine.  We are unwilling, however, to say that the jury were not warranted in finding that she acted as an ordinary person might do under the circumstances.  A very careful person might have acted as she did, while a reckless one may have turned the other way.  If a person is suddenly put in peril, without having sufficient time to consider all the circumstances, he is excusable from omitting some precautions for making an unwise choice, under these disturbing influences, although if his mind had been clear, he ought to have done otherwise.  This is especially true, if his peril is caused by the defendant's fault.  If one is placed by the negligence of another, in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in such a position might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance.  Even if, in bewilderment, he runs directly into the very danger which he fears, he is not in fault.  The confusion of mind, caused by such negligence,

is part of the injury inflicted by the negligent person; and he must bear its consequences. Shear. & Red. on Neg., Sec. 89.

It is a difficult question at most, to determine what a human being will do when confronted with sudden and unexpected peril of death. There is, perhaps, no ordinary human conduct in such a situation, but it would be as varied as different individualities. These are questions of fact to be decided by a jury from the evidence in each particular case, and unless the court can see that the verdict is plainly against the evidence, or the result of passion or prejudice, or a misconception of the proper effect of the evidence, such verdict should not be disturbed because the person injured might be imagined to be in fault, or that it is not supported by the evidence, especially when it is apparent, as we think it is here, the negligence of the defendant, averred and proved, brought about the confusion of mind that led to the false step of the deceased. Had the whistle sounded or the bell rung at least eighty rods from the crossing, and been kept whistling or ringing until the highway was reached as the statute required it to be done, and as the jury evidently found it was not, we feel impressed from a careful examination of the evidence the accident would not have happened, nor the life of the young woman been lost.

The photographs offered in evidence having been taken so long after the scene of the accident, nearly nine months, and when the natural surroundings had changed, were, in our opinion, properly rejected. We have examined the instructions given to the jury at the instance of the plaintiff in view of the criticisms put upon them and find no prejudicial errors in those respects. The instructions given for appellant were fair, and so far as we have been able to discover after a full examination of them, cover every material point as completely as the rights of appellant demanded, and all that was proper in the refused instructions was contained in those given by the court.

Finding no reversible error in the record and proceedings of the Circuit Court its judgment will be affirmed.

Judgment affirmed.