## Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. James J. Baker, Adm'r.

1. Verdicts—*Upon Conflicting Evidence.*—Where the evidence is conflicting, unless there is error in the instructions, a reviewing court is not warranted in reversing the judgment.

2. Due Care—*Where Peril is Imminent.*—In a sudden. emergency, with peril imminent, the same correct judgment as when there is time for deliberation, is not to be expected, nor is it required, in order to be free from the charge of negligence.

3. Instructions—*Care to be Observed by Railroads at Crossings.*— An instruction that those in charge of a train are bound to give reasonable warning so that a person about to cross with a team and wagon may stop and allow the train to pass, and that such warning must be reasonable and timely, taking into consideration the location, situation and surroundings existing at such crossing, is proper where no specific acts of negligence at common law are charged, but the allegation is general, and the plea is the general issue.

4. Pleading—*Allegation of Specific Acts Excludes Other Specific Acts Not Alleged.*—The allegation of certain specific acts, upon a well established rule of pleading, excludes other specific acts not alleged.

5. Statutes—*Chap. 114, Sec. 68, R. S., Construed.*—The phrase "any public highway" as used in the statute, Chap. 114, Sec. 68, includes much used and traveled highways, whether they have been formally and legally established or not.

6. Same—*Rules of Construction.*—Statutes are to be construed considering the language used, the intention of the legislature, and the object to be secured.

7. Highways—*What is Included in Term.*—The term "highway" is generic, inclusive of all public ways, and means a public road which every person, whether an inhabitant or a stranger, has a right to use for passage and traffic. The term, therefore, includes streets in cities, footways or sidewalks, turnpikes, plank roads and bridges.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Saline County; the Hon. Alonzo K. Vickers, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

Suit to recover damages for killing Edmund Baker, December 17, 1899, by running a locomotive attached to freight cars against a wagon which he was driving over a crossing of appellant's tracks.

Verdict and judgment for $700. Defendant appealed.

Two counts in the declaration.

The first charged negligence at common law, in this, that defendant was running a freight train toward the crossing of a public highway; that about 200 feet south of said crossing there was operated a coal mine with all the necessary tower sheds, tipple, screens, shakers, machinery, etc., inclosed so that they obstructed the view of persons on the west side of defendant's railroad, near said crossing, and prevented them from seeing cars approaching from the south, which said buildings, etc., are on defendant's right of way and near its track; that the deceased was approaching said crossing from the southwest, on a two-horse wagon loaded with coal, while a train of cars was approaching the crossing from the south at the rate of thirty miles an hour; that said crossing over defendant's railroad had been used and traveled for a long time prior by many persons and many teams, hauling coal from the mine to the city of Harrisburg; that it was the duty of defendant to have its train under control so as to avoid injury to those using the crossing, yet defendant, regardless of its duty, so carelessly and improperly drove and managed its train, that by and through its negligence and improper conduct, its locomotive and train struck the wagon of said Baker, whereby he was thrown to the ground and killed, etc., etc.

The second count has the same averments as to train and crossing as the first count, and charges statutory negligence in failing to ring a bell or sound a whistle, as required by law, when approaching a public crossing.

Defendant pleaded the general issue.

C. S. CONGER, attorney for appellant.

CHOISSER, WHITLEY & CHOISSER, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The railroad track runs north and south, the wagon road east and west and crosses the track at right angles. This road is a half mile long, and is on the south line of the city

of Harrisburg. It connects two roads entering that city, known respectively as the East and West Harrisburg, and Independence roads. It is much traveled, especially by teams hauling coal from the mine to Harrisburg, which mine with its buildings, is on appellant's right of way. A side track, having at the time some freight cars on it, extends north from the tipple on the west side of the main track, and parallel with it, past the crossing, at which place the two tracks are about fourteen feet apart. The main track, at the crossing, is elevated two feet above the ground surface. Between the two tracks there is a slight depression in the road, the approach from this depression rising gradually to the level of the crossing. The deceased, standing on a load of coal, and driving a two-horse wagon, came diagonally in a northeasterly direction from the mine scales, until he reached the wagon road close to the crossing, when he turned east nearly at right angle, to cross the two tracks. He drove over the side track and onto the main track, his horses passing over it, when appellant's locomotive, drawing a freight train, struck the wagon, throwing the deceased sixty feet and killing him. The train was over three hours late and running rapidly. The eyesight of deceased was defective. There is evidence tending to show that the train could not be seen by the deceased while driving from the scales to the crossing, owing to the obstructions caused by the mine buildings and freight cars on the right of way. This is contradicted by other evidence tending to show that at certain points on the way from the scales to the crossing, the deceased, if he had looked, could have seen the train. There is also evidence by witnesses, both for appellant and appellee, tending to show that deceased saw the train when his horses were within a few feet of the main track, and that instead of stopping he urged them forward in an effort to cross the track before the train reached it. A danger signal was given by the whistle, when the locomotive was at or south of the tipple, witnesses variously estimating its distance from the crossing when the signal was given. The tipple was about 240 feet south of the crossing.

There is an irreconcilable conflict in the testimony as to the giving of the signals required by the statute when cars are approaching the crossing of a public highway.

Upon all the controverted questions of fact the evidence is so conflicting that unless there was error in the instructions a reviewing court is not warranted in reversing the judgment.

Appellant insists that the deceased, when he saw the train approaching, was guilty of contributory negligence in urging his horses to cross the track instead of stopping until the train passed. There is evidence tending to show that the danger signal was the first notice the deceased had of the coming train; that then he was very close to the main track —one witness says within five feet; others place his team and wagon between the side and main tracks. The question of contributory negligence at this point, as well as from the time the deceased started to drive from the scales toward the crossing, was for the jury to answer. By their verdict they have said he was not guilty of such negligence. They may have found that the view to the south was so obstructed by buildings and freight cars, permitted by appellant to stand on its right of way, that the deceased, using ordinary care, could not have seen the coming train as he drove from the scales to the crossing. They may have found, also, that when he heard the danger signal and saw the locomotive driving toward him, that he was already so close to the track that he believed it safer to cross rather than to stop.

In a sudden emergency, with peril imminent, the same correct judgment is not to be expected, nor is it required, in order to be free from the charge of negligence, as when there is time for deliberation. Toledo, Wabash & W. Ry. v. O'Connor, 77 Ill. 391; Dunham Towing & Wrecking Co. v. Dandelin, 143 Ill. 415; Chicago & Alton Ry. Co. v. Corson, 101 Ill. App. 115, affirmed in 198 Ill. 99.

Considering all the circumstances in evidence, and in view of the verdict of the jury, we can not say that a reasonably prudent man, situated as the deceased was, would not have

done what the deceased did do, when he heard the danger signal and saw the train. Nor can we say, in the face of the verdict and evidence, that the view was not so obstructed but that he could have seen it, by looking to the south, while driving from the scales to the crossing.

Appellant insists that the court erred in giving the fifth instruction for appellee, which is as follows:

"You are instructed that if a railroad crosses a common road on the same level, or practically so, those traveling on either have a legal right to pass over the point of crossing, and to require reasonable care and caution of those traveling on the other road to avoid a collision; that while a passing train, from its force and momentum, will have the preference in crossing first, yet those in charge of it are bound to give reasonable warning, so that a person about to cross with a team and wagon may stop and allow the train to pass, and such warning must be reasonable and timely, taking into consideration the location, situation and surroundings existing at such crossing."

In criticising an instruction nearly identical with the above, the Supreme Court, in Toledo, St. L. & K. C. R. R. Co. v. Cline, 135 Ill. 41, says:

"The fifth instruction for appellee was also objectionable. The only negligence charged in the declaration in respect to the personal injuries received by plaintiff, and in regard to which the instruction would have application, was a failure to ring a bell or sound a whistle.

If the action is to be regarded as based upon the statutory liability imposed for the non-performance of one or the other of those acts, then the instruction, in requiring that a warning should have been given such as was reasonable and timely under the circumstances, declared a higher duty than the statute imposed. (Peoria, P. & J. R. R. Co. v. Siltman, 67 Ill. 72.) If, on the other hand, the action is regarded as based upon the common-law duty to give reasonable warning of the approach of the train, then it would seem the instruction was broader than the averments of the declaration justified, the pleader having stated therein the particular breaches of such duty upon which he relied, and having made no general averments of neglect of duty in that behalf."

The court follows this criticism by the statement that the giving of this instruction is not held to be reversible error.

We think that the criticism does not apply to the instruction in the case at bar for the following reason: In the count of the declaration in the case referred to, charging negligence at common law, specific acts of negligence are charged, but failure " to give reasonable warning " is not one of the acts charged. This omission is the basis of the criticism so far as the instruction refers to negligence at common law. In the case at bar no specific acts of negligence at common law are charged. The allegation is general, and is that appellant " so carelessly and improperly drove and managed said locomotive engine and train of cars that by and through the negligence and improper conduct of the defendant said locomotive and train of cars struck," etc. Upon a plea of the general issue this averment of negligence was sufficient. Chicago City Ry. Co. v. Jennings, 157 Ill. 278; Chicago & Alton R. R. Co. v. Redmond, 171 Ill. 347.

It was not error under this general allegation, with the general issue pleaded, to admit evidence that reasonable warning of an approaching train was not given. It was not error to give an instruction pertinent to this first count, if there was evidence to support that count.

In the case referred to, the allegation of certain specific acts, upon a well established rule of pleading, excluded other specific acts not alleged. But when the allegation of negligence in managing and driving a train is a general allegation denied by defendant, it is competent to prove such allegation by proving any acts which constitute such negligence.

We think, too, that the sentence " if a railroad crosses a common road," used in the instruction, instead of the phrase "any public highway," together with the words " to give reasonable warning," instead of the requirement of the statute as to ringing a bell or sounding a whistle, indicate sufficiently clear that the instruction applies only to the common law negligence charged in the first count of the declaration. If this is so, the part of the criticism in the case referred to, that the instruction imposed a

higher duty than the statute imposes, does not apply in the case at bar.

It is also insisted that the court erred in giving the ninth instruction for appellee, and in refusing to give the seventh, eighth, ninth, tenth, eleventh, twelfth and fourteenth instructions asked by appellant.

Without quoting all of these instructions, it may be said of them, that they brought squarely before the trial court, and bring before this court, the question what is meant by the phrase of the statute "any public highway."

For appellee the court gave the following :

9. "If you find from the evidence that the crossing where the collision happened was a part of a roadway connecting two public highways, and that such roadway and crossing was opened to the free and general use of the traveling public, and that the same was at the time of the collision and prior thereto used by the public as public highways are ordinarily used by the public, and that the defendant railroad company knew these facts, and further, that the railroad company recognized such crossing in the manner of approaching and passing over said crossing, then for the purposes of imposing the duty on the defendant to comply with the statute in regard to giving signals, such crossings must be regarded as in the statute requiring signals, as explained in these instructions."

For appellant the court refused to give the following instructions :

9. "The court instructs the jury: That the statute requiring a whistle to be sounded or a bell rung at least eighty rods from the place where a railroad crosses or intersects any public highway refers only to such roads and highways as are laid out by the public authority, or those that have been recognized as such by the public authorities which have the charge of public highways."

10. "The court instructs the jury : That the plaintiff has alleged in his declaration that the place where Baker was struck was a public crossing; this is a material averment and must be proven by the plaintiff as charged. The word highway, road or street may include any road laid out, or adopted and recognized by authority of the United States or of this state, or of any town or county of this state, but does not include a passway, which has never

been laid out or adopted, or recognized by some of the foregoing authorities."

12th.  " You are instructed that a public highway can only be created in this state in three ways:

1st.  By being laid out and established by the proper highway commissioners.

2d.  By the land where the same is located being dedicated by the owner thereof to the public for a highway and the acceptance of the same by the proper commissioners.

3d.  By the use of the same as a highway by the public for fifteen years or more.  And unless the plaintiff has shown by a preponderance of the evidence that the place where the injury occurred had become a public highway by one of the three methods above mentioned, that he has not established the allegation in his declaration that the place where the injury occurred was a public highway."

14th.  " The court instructs the jury : That if they believe from the evidence that the crossing where deceased was struck was never laid out as a public highway by the highway commissioners of the township within which it is located, nor was used by the general public for fifteen years or more, but that the same was opened by private parties, and used by the public for a period of less than fifteen years before Baker was struck thereon, but has never been in any way recognized or accepted as a public highway by the highway commissioners of such township, then such crossing would not be a public highway."

It is clear from the evidence that the road in question was in general use by the public and was much traveled. It does not appear that it had ever become a public highway by any of the methods stated in appellant's refused twelfth instruction.  This road, connecting the leading thoroughfares entering the city of Harrisburg, had been traveled for five years before the accident, but the owners of the land had not dedicated it to public use until two years before.  There is no evidence of any acceptance by the highway commissioners or other authorities.  Some idea of the coal traffic alone passing over it, is given by the testimony of officers of the Harrisburg Coal Company. Chas. Parker, who had been secretary of the company, testified that two or three months before the accident, it

was no unusual thing for forty or fifty wagons to be loaded with coal in a day.  D. N. Anderson, assistant secretary of the company at the time of the accident, testifies that there was hauled over the crossing in October, 1899, 26,298 bushels; in November, 25,084 bushels; and in December, 17,636 bushels; that an average wagon load is twenty-five bushels.  Upon this estimate it would appear that 2,760 teams, hauling coal alone, crossed and re-crossed this crossing in these three months.  The deceased was killed December 19, 1899.  It is evident from this and other testimony, that whether this road was a public highway in a strict legal sense, it was in fact a much-used and traveled public highway.  We think the phrase "any public highway" as stated in the statute (Hurd's Stat., Chap. 114, Sec. 68) includes such much-used and traveled highways, whether they have been formally and legally established or not.

Statutes are to be construed considering the language used, the intention of the legislature and the object to be secured.  Hogan v. Akin, 181 Ill. 452; Soby v. People, 134 Ill. 66; Bobel v. People, 173 Ill. 19; Andersen v. C., B. & Q. Ry. Co., 117 Ill. 26; People v. Hinrichsen, 161 Ill. 223; Harrison v. People, 92 Ill. App. 643.

The purpose of the statute was to protect the general public when crossing railroad tracks on traveled roads and highways.

In passing on the question as to whether a street in an incorporated town was a public highway as contemplated by the statute, it is said in the Mobile & Ohio R. R. Co. v. Davis, 130 Ill. 150:

"The words 'any public highway,' as here used, are not limited in their signification to the common public roads in the country, but their meaning is broad enough to include streets and roads in incorporated cities and towns."

Shearman and Redfield, in their work on the Law of Negligence (Vol. 2, Sec. 333, 4th Ed.), say:

"The term 'highway' is generic, inclusive of all public ways, and means a public road which every person, whether

an inhabitant or a stranger, has a right to use for passage and traffic. The term will, therefore, include streets in cities, footways or sidewalks, turn-pikes, plank roads and bridges."

The statement of the text writers is sustained by numerous authorities. To the same effect also, are State v. Mathis, 21 Ind. 278; City of Detroit v. Blackeby, 21 Mich. 84; Jones v. Inhabitants of Andover, 6 Pick. 58; Davis v. Smith, 130 Mass. 113; State v. Wilkinson, 2 Vt. 480.

In the latter case the Supreme Court of Vermont say:

"A common street and a public highway are the same, and any way, which is common to all the people, may be called a highway."

What is said in Chicago & Alton R. R. Co. v. Dillon, 24 Ill. App. 209, is peculiarly applicable in this case, the evidence being similar, both as to the amount of travel and the recognition of the crossing as a public highway by servants of appellant. In this case it is said:

"The position that 'Avenue F' is not a public highway within the meaning of the statute requiring signals, is not tenable under the evidence of the case. It is shown to have been open to and used by the public as a road for more than ten years. It was one of the most public roads in the county of St. Clair, so far as it could become so by general use and recognition.

Appellant's employes, as well as those of all other railroad corporations using the various tracks in the stock yards, treated it as a public highway, and, as they swear, habitually gave the signals. It could not have been the intention of the legislature that Sec. 68, Chap. 114, R. S., requiring signals at public highways, should only apply to roads defined to be public highways in the first section of the chapter on roads and bridges. We think the jury was fully justified by the proofs, under the instruction of the court, in finding that the place of the injury was on a public highway, as alleged in the declaration, and a failure to give the required signal, statutory negligence."

Nor do we read the affirmance of this judgment of the Appellate Court by the Supreme Court in 123 Ill. 570, as holding any contrary view, but rather as sustaining it. After reciting the conditions, and the great travel over the crossing, the court say:

"In view of the circumstances stated, the duty of the defendant to operate its train at a moderate rate of speed, and to give the usual signals of its approach by ringing the bell or sounding the whistle, or both, became the more imperative. Of this there can be no question."

There is a broad distinction between a private crossing, such as a farm crossing, or perhaps a crossing not open to general public use, leading only to some factory or private enterprise, and a crossing used and recognized by the people generally as a public crossing. This distinction is referred to in Chicago & Alton R. R. Co. v. Sanders, 154 Ill. 536, where it is said:

"For the purposes of this case it may be conceded to be true, that the statute of this state does not require the ringing of a bell, or the sounding of a whistle at a private crossing."

And in this case it is also said:

"Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or apprehended danger. * * * The question of negligence will depend upon the circumstances of each case, and is a matter for the determination of the jury."

It would be a narrow construction and subversive of the purpose of the statute, to hold that its provisions requiring a bell to be rung or a whistle sounded continuously, for eighty rods before crossing any public highway, does not apply to a crossing, no matter how public or how much traveled, unless it formed part of a highway which had been officially recognized, or had become such by prescription through a long term of years.

Courts do not favor a narrow construction of statutes enacted for the protection of the people.

Appellant's sixteenth and eighteenth instructions are general statements of the law, which if given would not have been error, but when refused, being merely general statements, was not error.

The nineteenth refused instruction is substantially covered by appellee's fourth instruction, which defines the

ordinary care required of the deceased, as being, "that degree of care and caution which might be reasonably expected from an ordinary person under the surrounding circumstances."

As there is nothing in any given instruction contradictory to this definition, we fail to see how appellant suffered from a refusal to give an instruction which, although in other words, conveyed the same meaning to the jury.

Finding no material error in the record, the judgment of the Circuit Court is affirmed.